### BRAINE v. ROSSWOG.

(Supreme Court, Appellate Division, First Department. January 15, 1897.)

USURY—TRANSACTION THROUGH AGENT—EVIDENCE.

  A mortgagee and her agent are so identified as to charge the mortgagee with the agent's act in exacting a usurious bonus, though she had no actual knowledge thereof, where the agent and the mortgagee are father and daughter, live in the same house, and are engaged in the chattel mortgage business, the daughter (mortgagee) supplying the money and the father transacting all the business, the proceeds being used for their common support, though the mortgagor executed with the mortgage an instrument acknowledging that the father was her agent to procure the loan, and agreeing to pay him for his services the sum constituting the usurious bonus.

Appeal from special term, New York county.

Action by Mary Braine against Julie Rosswog to have a note and mortgage declared void for usury. From a judgment entered on a decision of the trial judge in favor of plaintiff, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

David Gerber and I. M. Dittenhoefer, for appellant.
Charles S. Simpkins, for respondent.

BARRETT, J. There was evidence in this case, of a circumstantial nature, to warrant the findings of the learned trial judge. This evidence went far beyond mere surmise or conjecture. The inferences therefrom were certain, and they pointed clearly and directly to the usury charged. We entirely agree with the view of the law

presented upon the appellant's behalf. It is not sufficient for the plaintiff to show that the loan was made by the agent of the lender, and that this agent exacted and received a bonus over and above the legal interest. It is undoubtedly the rule that the plaintiff must also show that the act of the agent was authorized by the principal, or that he took the bonus with the lender's knowledge and assent, so that the latter, at least by acquiescence, became a party to the usurious transaction. But here there was more than an ordinary agency. The parties were clearly acting in concert to evade the usury law. They were father and daughter. They lived together. The proceeds of the usury went to support them both. There was no pretense of compensation to the father for his services. The daughter knew that he was exacting compensation from the lender, or else that he was acting gratuitously. It seems that she had a small capital, deposited in bank in her own name. Upon that the business was transacted. It was what is known as a "chattel mortgage business." The father did the business, and the daughter signed the checks. That, in fact, was all she did.

The transaction in question was not an isolated one. It was simply an incident of the general business in which the parties were engaged,—the business of lending money at usurious rates to needy people upon the security of chattel mortgages. "I have drawn," says the defendant, "many checks for loans made by my father." The father advertised in the newspapers, offering to lend money. The plaintiff, seeing the advertisement, went to the place therein indicated. There she found Rosswog (the father), and the usurious bargain was made, according to her testimony, directly with him as principal. In her complaint, however, she avers that the bargain was made with Rosswog, "claiming to act as agent for the defendant." But, whether it was made with him as principal, or in form as agent, is of little consequence. He and his daughter were one in the transaction. He attended to the entire business; drew all the papers, including the check; received the bonus; retained the documents in his own possession; made the subsequent extensions; indorsed partial payments upon the note; and, further, when payments were delayed, wrote all the dunning and threatening letters to the plaintiff. There was no evidence that he ever delivered the note or mortgage to his daughter. The contrary was fairly inferable from his continuous possession of these papers. She was asked if she ever had possession of the note, and her reply was:

"I kept all my papers in my father's safe, and he transacted my business for me."

All she professed to know about the transaction in question was that she signed the check for $250, and she performed this single act in her own house. There was here no ordinary agency. Everything was left to the father. Whatever he did, she did. This is the only reasonable inference from her testimony and his. She says:

"My father makes out the papers, and, if everything is satisfactory, I make the loan. Q. Did your father make this loan? A. If it was satisfactory; yes, sir."

All that took place between them when the loan was made was this, according to her testimony:

"When my father talked to me about the matter he said he had an application for a loan that he thought was a very good one; that Mr. Kinney found everything correct; and I then gave him the check for the amount. Q. You say he submitted the loan to you and you approved it? A. He submitted it to me as being satisfactory and as being very good, and I gave him the money."

He says:

"Q. Is it a fact that you and your daughter live together? A. Yes, sir. Q. Did you not support your daughter at this time out of the moneys that you received from these mortgages? A. She gets the interest of her money. Q. How much interest does she get? A. I couldn't tell you. Q. Do you not support your daughter from the money that you loan to different persons on chattel mortgages? A. I pay as much as I can, and she has the interest coming to her. Q. Do you not give her money that you pretend to receive through extensions of mortgages that you have loans made for her on? A. Yes, sir; I do give her some of that money. Q. Then, isn't it a fact that some portion of the moneys which you received from Mrs. Braine that you gave to your daughter upon this mortgage? A. I don't know as I gave her any of that money which I received from Mrs. Braine. I give her, sometimes, money when I have some."

The documents to which Rosswog secured the plaintiff's signature cannot avail as against the real facts of the case. It appears that at some time the plaintiff signed two papers,—one, an instrument acknowledging that she had constituted Rosswog her agent to procure the loan, that she had agreed to pay him $50 for his services, and that he had no interest whatsoever in the money to be procured by him; the other, an affidavit verifying all the statements made in the instrument referred to. There seems to be some confusion about the date when these papers were signed. Rosswog says they were signed at the same time as the note and chattel mortgage. The plaintiff says she never knew that she had signed any papers save the note and chattel mortgage. The notary public whose name is attached to the affidavit, strangely enough, was not called as a witness. And the affidavit purports to have been verified on the 21st day of April, 1895. Either this is a misprint, or the defendant in some undisclosed manner secured the plaintiff's signature thereto two years after the loan was made. Assuming that the date "1895" is a misprint, and that "1893" was intended, it is still singular, if these instruments were fairly obtained, that the defendant failed to call the notary as a witness. The truth is that these documents really strengthen the plaintiff's case. They are not such documents as any innocent broker, dealing honestly, would present to a borrower. They are elaborate and specious, carefully drafted, and evidently printed for general use with recurring victims. The object was plainly to cover up the real transaction, and to estop the victim from subsequently asserting the usury. But the law here admits of no estoppel upon the truth. That must prevail, as against all such devices to cover up usury. These documents color the evidence of the defendant and her father, and they lend additional force and meaning to all the facts disclosed. Parties cannot escape, under such circumstances as these simply, by keeping the hand that writes the check in the background. Everything points to the defendant's complicity, and once more a cunning attempt to evade the statute proves unsuccessful.

The judgment should be affirmed, with costs. All concur.