(19 Misc. Rep. 627.)

## DUNLAP v. TOY et al.

## SAME v. DOWNEY et al.

(Supreme Court, Appellate Term, First Department. March 25, 1897.)

USURY—TRANSACTIONS WITH THIRD PERSON.

   Plaintiff was engaged in loaning money on the recommendation of his brother J., who charged borrowers a specified sum for procuring loans. Defendant applied for a loan to J., who told him that a loan of $25 would cost $36. J. drew up papers for defendant to sign, one of which was an agreement to pay J. $11 "for services and expenses in procuring the loan." He then gave defendant a paper addressed to plaintiff, stating that an advance of $36 was desired, and that defendant "has executed the necessary instruments:" Defendant took the paper to plaintiff, who gave him $36, and took a receipt therefor. Defendant then returned to J., and paid him the $11. All the papers in the transaction were on the blanks furnished and filled up by J. and plaintiff respectively. No evidence was given that the $11 was actually intended to pay for services and expenses in procuring the loan. Held, that plaintiff and J. were engaged in one business, and therefore the charge of $11 was usurious, though there was no evidence given that plaintiff received any of it.

Appeal from Eighth district court.

Separate actions by James W. Dunlap against Charles P. Toy, interpleaded with another, and against John P. Downey, interpleaded with another. There was a judgment for plaintiff, and defendants appeal. Reversed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

John Callahan and William W. Cook, for appellants.
David C. Myers, for respondent.

DALY, P. J. The plaintiff sues as the assignee of W. P. Dunlap, who, it is claimed, holds an assignment from the defendants Toy and Downey, respectively, of wages due them from the Postal Telegraph Company, of which they were employés. The assignment of wages was made before they became due, in consideration of a loan or advance of money. These actions were originally

brought against the company by this plaintiff, but Toy and Downey were interpleaded, as claiming the wages and disputing the assignments on the ground of usury in the transaction for the loan or advance. The justice found in favor of the plaintiff in each action, giving judgment against Toy for $16, and against Downey for $20, the balance claimed to be due and remaining unpaid of the wages assigned, the assignment in each case being for $36. The two appeals were argued together, and the court is referred to the records in both cases as presenting the facts upon which each is to be determined.

The question to be considered is whether the defense of usury was established by a preponderance of proof on the part of the defendants. The facts appear to be as follows: W. P. Dunlap, who is said to reside in Philadelphia, carries on the business of lending or advancing money in the city of New York to employés upon assignments of wages or salary to fall due. His son James W., the plaintiff in this action, advances the money to the borrower, upon the recommendation of another son, John L., who receives from the borrower a sum agreed upon for the loan. In each of these cases the sum agreed upon and received by John L. was $11 for a loan of $25. The controversy is whether Dunlap and his two sons were engaged in one business, so that the exaction by John L. affects the loan and assignment. That the Dunlaps were all engaged in one business, either as principals or as agents for each other, or as assisting each other in business, admits of no doubt. The method of operating the business is as follows: John L. advertises to lend money to employés. They call upon him at his residence, No. 301 West Twenty-First street, in this city, where the amount of the loan is fixed, and the sum to be paid him for it is agreed upon. This is clear from the proof in the Downey case, which is very full upon that point. Downey applied first for a loan of $20, and asked what it would cost. John L. told him he had better take $25. Downey asked what it would cost, and John L. replied, "Thirty-six dollars." Downey told him he only needed $20. John L. told him there would only be a difference of $1. So Downey decided to take $25. He was told to call again, and the next day John L. went down to the company where Downey was employed, to make inquiries, and then told him to come with a reference. When he did so, John L. drew up papers for him to execute, one being an assignment to "James W. Dunlap, Agent," of $36 of wages, and the other being an agreement to pay John L. $11, "for services and expenses in procuring the loan." The papers having been executed by Toy and Downey, John L. gave them each a paper addressed to J. W. Dunlap, stating that an advance of $36 was desired, and that the applicant "has executed the necessary instruments." Toy and Downey took that paper to James W., who lived on the opposite side of the street, on the same block with John L., and received from James W. his check upon a bank for $36, to the order of each borrower, who indorsed it. It was then cashed by James W., and the full amount, $36, handed to the borrower, who receipted for it to James W., as agent, assigning his wages to that amount. The borrower then returned to John

L., according to previous understanding with him, and paid him the $11 theretofore agreed upon. All of the instruments or papers in the transaction were made out upon blank forms produced and filled up by John L. and James W. respectively.

The contention of the plaintiff, James W., that the advance made by him as agent of W. P. Dunlap was unconnected with the agreement for the payment to John L., is disposed of by the mere statement of the facts. It is not necessary for the defendant to prove that James or his father shared in the $11 received by John, for, if the whole business was carried on by them in order to profit John alone, the result would have been the same as if they shared in the proceeds; the only question being whether the $11 received by John was upon an agreement for the payment of that sum for the loan of $25, and whether it is to be necessarily inferred from the course of business that the loan was not to be made unless such a payment was agreed to. No evidence was offered to show that the $11 exacted by John L. Dunlap was actually intended as a payment for services and expenses in procuring the loan of $36. On the contrary, from the transaction as detailed above, it seems that it was fixed in advance as the cost of a loan of $25; and it is manifest that the roundabout course of having the application made to John L. in the first instance, and the agreements made with him, and then having the borrower sent out of the house to his brother, to obtain the whole amount named in the assignment, with an understanding that he was to return and pay John L. the charge agreed upon, is a mere scheme to try and cover up the connection between the parties and the single nature of the whole transaction, and to give a fictitious appearance of bona fide services performed by John L. It is quite certain that no loan would be made by James W. until the "necessary instruments had been executed" by which the deduction or payment for the loan had been fixed in advance by John, and the loan is thus shown to be dependent upon and in consideration of such agreement. As that agreement was usurious, no part of the loan can be recovered, and the assignment taken to secure it is void.

These cases differ from those cited by the respondent, where no agreement for unlawful interest is proved, and it is merely shown that a charge for commissions or services is made after the agreement for the loan. Morton v. Thurber, 85 N. Y. 550; Guggenheimer v. Geiszler, 81 N. Y. 293. In the Downey case the charge of $11 was fixed and agreed to when the loan was first applied for as a charge for the loan, and it was not until afterwards that the borrower was required to sign a paper in which the charge was specified to be for services and expenses. In the case of Toy he was simply required to sign certain papers, to go and get the $36, and to bring back $11 of it to John L. Dunlap. No evidence was given of the rendition of any services for which the charge was made.

It is claimed that the plaintiff is not affected by the transaction between John L. and the borrower, because there is no proof that such agreement was known to the plaintiff or to his father, the lender of the money. But as the proof shows that the business was

carried on in fact through the agency of both the plaintiff and his brother John L.; that the transaction commenced by the advertisement which brought the borrower to John L.; and that he was in effect the sole active agent for making the loan, with full power from the principal to fix the terms of it,—the latter is undoubtedly bound by his acts. It is not the case of an agent, without the knowledge of the principal, exacting a charge for his own benefit. It is not easy to prove usury by direct testimony. The fact that Downey was to be charged $1 more if he took $25 than if he took $20 is strongly indicative that the charge was really for interest, rather than for services. That charge, like interest, bore a relation to the amount of the loan, but the services would be the same for a loan of $20 or $25. The same inquiries would have to be made and papers drawn for either. That a plan or scheme for evading the usury law, by a form of transaction intended to cover the unlawful agreement, has been resorted to by the parties, is usually a matter of inference from the facts proved. It is easy to see that, if the brother who advertised for, received, and investigated applications also paid over the money upon an agreement to deduct inordinate sums for pretended charges and expenses, a simple issue would be presented as to the bona fides of the transaction. When, therefore, an involved system is adopted, without necessity, the conclusion is inevitable that it is intended to throw difficulties in the way of determining whether the parties were acting in good faith or illegally. The case resembles in its leading features that of Braine v. Rosswog, 42 N. Y. Supp. 1098, lately decided in the appellate division. The difference between the cases is that no proof is offered here of a sharing by the alleged principal with the agent in the sums retained by the latter out of the loan; but that is not essential to sustain the defense of usury, if the authority to retain such sums is to be inferred from the regular course of the business, as carried on by the principal through his agents.

Judgment reversed, and new trial ordered; costs to abide the event. All concur.