ESTHER SILVERSTEIN, Respondent, *v.* SAMUEL TAUBENKIMMEL and Another, Appellants, Impleaded with ABRAHAM LISTIZKY and Others, Defendants.

Third Department, June 27, 1924.

**Mortgages — foreclosure — defense of usury — mortgage covered amount of existing mortgage to person making loan and amount of loan of $6,300 and bonus of over $3,000 — mortgage was taken in name of third person to secure guaranty and assigned, as part of same transaction, to wife of person making loan who assigned it as gift to plaintiff, her daughter — bonus of over $3,000 paid to brother of person making loan — defense of usury sustained — former mortgage may be revived and enforced.**

The defense of usury in an action to foreclose a mortgage is sustained where it appears that the mortgage was given to cover the amount of an existing mortgage in the name of the person making the loan and to cover the amount of a loan of $6,300 and also a bonus of over $3,000; that the mortgage was taken in the name of a third person who did not furnish any consideration therefor for the purpose of securing his guaranty of two payments of the principal and was assigned by him as a part of the same transaction to the wife of the person mak-

ing the loan who assigned it as a gift to her daughter, the plaintiff; that the bonus of over $3,000 was paid to the brother of the person making the loan and said bonus was agreed to by the latter; that the person making the loan was in the habit of investing his money in the name of his wife, to whom the mortgage was assigned without consideration and who had no knowledge as to the transaction resulting in the mortgage.

Whether or not the wife of the person making the loan to whom the mortgage was assigned had knowledge of the usurious transaction is immaterial, for the evidence clearly establishes that she acted merely as a dummy and that the real mortgagee was the person who made the loan and who participated in the illegal transaction in which usury was charged and acquiesced therein, and, therefore, the transaction is the same as though the person making the loan had been named as mortgagee in the mortgage.

*It seems*, that the former mortgage was not tainted by the usurious transaction and may be revived and enforced.

APPEAL by the defendants, Samuel Taubenkimmel and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Sullivan on the 8th day of February, 1924, upon the decision of the court rendered after a trial at the Sullivan Special Term.

The action is for the foreclosure of a mortgage. The defense is usury.

*Isadore Rothenberg* [*Abram F. Servin* and *John Bright* of counsel], for the appellants.

*Ellsworth Baker* [*Stephen W. Zeh* of counsel], for the respondent.

COCHRANE, P. J.:

The mortgage in question with an accompanying bond was executed November 5, 1921, by the appellants to one Morris Horowitz for the sum of $14,882.50, bearing interest at the rate of six per cent per annum. Horowitz at the same time and as part of the same transaction executed an assignment of the bond and mortgage to Rose Evans and she subsequently assigned the same as a gift to her daughter who is the plaintiff herein. Horowitz did not furnish any of the consideration for the bond and mortgage. The reason why he became the nominal mortgagee and the immediate assignor thereof to Rose Evans was to secure his guaranty for the first two payments of principal amounting to $4,000 and interest, which guaranty was contained in his assignment. There was an existing mortgage on the premises on which there was unpaid $5,500 with interest from August 10, 1921, which mortgage was owned by Charles Evans, the husband of Rose Evans. This mortgage was satisfied by Charles Evans and the amount thereof was included in the mortgage in question. In addition thereto the appellants only received $6,300 for the mortgage of $14,882.50. In order to procure an additional loan of $6,500

the appellant Samuel Taubenkimmel with his friend Horowitz visited Isaac Evans (sometimes called Isadore). Isaac was a mortgage broker and a brother of Charles Evans, the husband of Rose Evans. Isaac said he could not furnish more than $6,000 which he would endeavor to procure from his brother Charles who lived in New York provided the appellants would pay " $3,000 bonus for that $6,000." Some time thereafter Isaac and Charles Evans, the two appellants, and their son, and the said Horowitz, and still another party who had some claim on the premises met in Hurleyville and after an interchange of views and some negotiations it was agreed that Charles Evans would loan $6,300 and that $3,000 should be received by Isaac as a " bonus " for procuring the loan. The parties then repaired to the law office of Mr. Baker and he was instructed to prepare the papers. Some time thereafter the papers were prepared and executed in Mr. Baker's office. Six thousand three hundred dollars was checked out by Isaac Evans to various persons for the benefit of the appellants, including $336.52, as stated in the respondent's brief, " for legal services in connection with closing the loan, which also included the mortgage tax and recording fees on the mortgage." Isaac Evans retained for his own use over $3,000, which was in addition to the said sum of $336.52 paid the attorney as above stated. He claims to have paid Samuel Taubenkimmel $1,400 in cash out of the $3,000 but produces no receipt or voucher therefor and such payment is denied by Taubenkimmel. On his own admission, however, he has retained over $1,600 for a loan of $6,300 and the additional $1,400 which he claims to have advanced in cash. His explanation is that he charged five per cent for procuring the money and two per cent annually for three years for guaranteeing its payment but this modest claim even if it applies to the original $5,500 mortgage as well as the additional loan of $6,300 and the alleged loan of $1,400, will not make up the entire consideration of the present mortgage. His testimony that he guaranteed payment of the mortgage is not justified by the evidence in the absence of any writing produced at the trial to that effect. It is manifest that his so-called guaranty had no origin until the necessity therefor was suggested by the existence of this litigation and that it never developed beyond his own mental process. The trial justice stated: " That Isaac Evans, the agent of Charles Evans and Rose Evans, charged the defendants an unconscionable amount for the procuring of the loan, I have not the least doubt. Upon the proof before me I am not justified in finding knowledge in Rose Evans of the true character of the transaction." We think that the trial justice overlooked the fact that Rose Evans was only nominally the mortgagee. She was

merely a figurehead.　She knew nothing of the transaction of the mortgage and had no connection therewith except that she subsequently assigned it to her daughter.　The testimony makes this quite clear.　She says she does not remember exactly when she first learned that this mortgage was in her name; that she understood it was given to her husband and by him assigned to her, which was not the fact; that she had many mortgages; that sometimes she gave money to her husband and sometimes to her brother-in-law; that she does not remember giving any money on this mortgage; she cannot mention any date when she did so; that she does not know how much money she gave her husband or brother-in-law or when she did so; that when she gave her husband money it was all in cash although she had different bank accounts; that her brother-in-law Isaac had invested in mortgages for her a little less than $100,000; that he collected the interest for her and that she allowed him to do business with this money; that she left all her business to her brother-in-law Isaac and to her husband Charles.　This question was asked her: "Q. After Mr. Evans got this mortgage for you then you didn't know what happened to that mortgage?"　And to this she answered: "Because I know I am never in it; I leave it to them."　Rose Evans when she assigned this mortgage to her daughter knew then if not before its amount.　Assuming that she was the real owner of the mortgage and that she furnished its consideration it is a serious question whether on her testimony as above summarized she is not responsible for any usury practiced by her husband or her brother-in-law. (*Braine* v. *Rosswog*, 13 App. Div. 249; *Bliss* v. *Sherrill*, 24 id. 280.) In the case last cited it was said in language peculiarly appropriate to this case as applicable to her business relationship with either her husband or her brother-in-law: "It was the duty of the plaintiff to know something about her bank account — to have her husband report to her what he was doing with this large amount of her property.　She could not, without investigation and care, permit her husband to proceed with this property, violate the law, oppress the public by usurious contracts, giving her the benefit of it, and she neglecting and refusing to know anything about it. ' Left all my matters to Mr. Bliss,' as she says, ' gave him the entire control,' ' paid no attention to the details of business.'　In so doing she infringes another principle of the law of agency, which requires that ' a principal should, within a reasonable time, examine his agent's report and disavow such acts as are unauthorized, and, if he fails to do so, his silence will be deemed good evidence of a ratification.'　(1 Am. & Eng. Ency. of Law [2d ed.], 1206, and cases cited in note 3.)"　But on this question of the real ownership

of the mortgage we are not limited to the testimony of Rose Evans. Both Charles. and Isaac testified that the consideration of the mortgage was furnished by Charles. The latter says he gave Isaac his check for $7,000 and $2,000 in cash as the consideration for this mortgage. Isaac also says he received a $7,000 check from Charles. This check alone it may be observed exceeded the $6,300 which the appellants received on the transaction. Charles testified positively that his wife gave him no money to invest in this mortgage. He further testified as follows: " Q. The money that you invest, you invest sometimes in your wife's name? A. Always, generally in my wife's name. Q. Generally in your wife's name? A. Yes, sir. Q. And the money that was invested in this mortgage was your money but invested in your wife's name? A. It is the same thing." By the lips of the Evans witnesses themselves, therefore, it appears that not Rose Evans but her husband Charles furnished the entire consideration of the mortgage so far as it was furnished and that he is the real party interested. This conclusion finds further substantial confirmation in the fact that the former mortgage of $5,500 which was satisfied and the amount thereof included in the present mortgage was owned by Charles. The testimony of the Evans witnesses is not, entirely consistent but its purpose is as above indicated. It is safe to say they did not intentionally make it unfavorable to themselves. If then Charles Evans, the real owner of the mortgage, knew of this extortionate charge by his brother he is responsible therefor. (See *Robertson* v. *Merwin, Nos. 1 & 2,* 154 App. Div. 723; *Bliven* v. *Lydecker,* 130 N. Y. 102.) Charles and his brother deny that Charles was present at the Hurleyville conference when the corrupt bargain was made but five witnesses testify that he was present and participated in the negotiations and the substance of their testimony is that he acquiesced therein. He certainly made no protest. The testimony of the witness Goldstein, an employee in Mr. Baker's office, that Charles was not present when the papers were executed does not reach the point. It is not claimed that he was then present. The testimony is that this conference when Charles was present was when the oral arrangement was made several days before the execution of the mortgage. The witnesses say that they then went into Mr. Baker's office and authorized him to prepare the papers and Mr. Baker does not deny that Charles Evans was there on that occasion. The weight of the evidence is that Charles participated in the illegal transaction and acquiesced therein. Such an inference is likewise especially reasonable because of the close business as well as family relationship existing between himself and his brother. The trial justice says the transaction

" was conceived and carried through in an unscrupulous way and with an attempt to hide and becloud the true character." With this statement we are in entire accord and we also think that the evidence fully justifies a finding to that effect and that the trial justice should have found as requested that Rose Evans was " a dummy for said Charles Evans." The assignment of the bond and mortgage to her was clearly a device to cover the unlawful transaction and place it beyond the reach of the law. The law does not hesitate in such a case to remove the cover and expose the transaction in its true light. In *Schanz* v. *Sotscheck* (160 App. Div. 798) this pertinent language was used: " One cannot escape the force of a usurious agreement by resorting to the use of a dummy. Form amounts to nothing if the facts alleged and established show the transaction was usurious. Courts always look to the actual nature of the transaction and not to the form which the parties may have given to it. (*Smith* v. *Cross*, 90 N. Y. 549.) In the great majority of usurious transactions a subterfuge of one kind or another is resorted to for the purpose of giving it a legal appearance. Such appearance, however, never deters the court from pronouncing the transaction usurious, once that fact appears. (*Braine* v. *Rosswog*, 13 App. Div. 249.) This rule is well stated in *Knickerbocker Life Insurance Co.* v. *Nelson* (78 N. Y. 137), where the court stated: ' It has been said and reiterated by the courts from the time the schemes and contrivances of lenders became the subject of judicial examination, that there is no contrivance whatever by which a man can cover usury, * * * and that no subterfuge shall be permitted to conceal it from the law.' "

The former mortgage of $5,500 was not tainted by this usurious bargain and probably may be revived and enforced. In *Patterson* v. *Birdsall* (64 N. Y. 294) the headnote is as follows: " A valid and subsisting obligation is not destroyed because included in a security or made the subject of a contract void for usury; although formally satisfied and discharged it may be revived and enforced in case the new security or contract is invalidated." We may not, however, in this action enforce that mortgage, *first*, because it was not owned by the plaintiff, and *second*, because such procedure is not within the contemplation of the pleadings. (*Hansee* v. *Phinney*, 20 Hun, 153; *Campbell* v. *Campbell*, 23 Abb. N. C. 187.)

. The judgment should be reversed on the law and facts and the complaint dismissed, with costs.

All concur.

Judgment reversed on the law and facts and complaint dismissed, with costs. The court disapproves of the seventh finding of fact in

the decision and finds as facts that as far as there was any consideration for the bond and mortgage in question it was all advanced by Charles Evans; that it was agreed that Isaac Evans should retain for his own use over $3,000 of the consideration of said bond and mortgage and the same was so retained by him; that said sum was disproportionate to the value of any services or equivalent rendered by him and was oppressive and usurious; that Charles Evans knew at the time of the execution of said bond and mortgage of said agreement with Isaac Evans and acquiesced therein; that Rose Evans was only the nominal holder of the bond and mortgage and that she furnished no part of the consideration therefor and that her apparent and nominal ownership was intended as a device to conceal and evade the usurious transaction; that the actual owner and mortgagee was Charles Evans.