Lesley *v.* Johnson.

---

## Lesley *vs.* Johnson and others.

Nothing short of a corrupt and illegal *contract* in violation of the statute will constitute usury. It must be a contract or agreement for the loan or forbearance of money, goods or things in action, by which illegal interest is reserved and taken, or agreed to be reserved or taken. Otherwise usury does not exist.

The reservation of illegal interest, or the taking or agreeing to take unlawful interest, must enter into or become part and parcel of the contract, in order to bring the transaction within the prohibition of the statute.

When a contract for the loan of money, legal and innocent in itself, is once made and consummated, it cannot be made usurious and illegal by any subsequent transactions of the parties.

Though subsequent transactions may of themselves be illegal, and forbidden by law, they cannot impart the taint and the consequences of usury to an antecedent agreement, fair and just and upright in itself.

If the obligation under the agreement is to pay a debt, the obligation, with the legal rights resulting from it, remain in all their force, and cannot be discharged by engrafting upon it a subsequent agreement obnoxious to the charge of usury.

If the subsequent agreement has the effect to annul and rescind the previous agreement, a different rule will prevail.

Lesley *v.* Johnson.

Where subsequent to the execution of a bond and mortgage, the mortgagors made an agreement with B. that if he would pay the money due thereon, to the holder of the mortgage, take an assignment thereof, and execute a covenant extending the time of payment, they would pay him a bonus of $4355.55, which was acceded to by B. and was carried into effect by both parties; *Held* that the subsequent usurious agreement did not taint the mortgage with usury, or constitute a defense to an action to foreclose the same, brought by an innocent purchaser thereof.

A person who does acts, or makes representations or admissions, designed to influence and which do influence the conduct of another, will be precluded from denying such acts and representations when such denial will operate to the injury of the person so influenced by them.

Mortgagors, long after the execution of the mortgage, at a time when B. was about to become the assignee thereof, covenanted with him that there was due and unpaid, upon the mortgage $27,222.20, and that there was no set-off, defense or counter-claim thereto. Subsequently, by another instrument, they declared and affirmed that $18,222.20 was still due and unpaid, for principal ($9000 having been paid in the mean time.) These papers were left with B. and exhibited by him to the plaintiff as an inducement for the latter to purchase the bond and mortgage, one of the mortgagors telling him there was over $18,000 of principal due, and assuring him he could have no better investment and no better security for his money. Confiding in these representations, the plaintiff took an assignment of the bond and mortgage and paid B. $18,222.20 for principal, beside the arrears of interest. *Held* that the mortgagors could not be permitted, afterwards, to deny what they had thus asserted to be true. That whatever might be the real estate of the mortgage debt and the sum really due and unpaid thereon, as to the plaintiff and those who might claim under him, the mortgagors were *estopped* from disputing that the money paid by the plaintiff was the true sum due and payable, at the time.

APPEAL by the defendants from a judgment entered at a special term, for the foreclosure of a mortgage.

*John E. Parsons,* for the plaintiffs.

*R. W. Van Pelt,* for the defendants.

*By the Court,* BROWN, J. The mortgage which this action is brought to foreclose, bears date November 10, 1852, and was given by the defendants, Elias Johnson, David B. Cox and Joseph W. Fuller, to John F. Delaplaine, to secure the payment of the sum of $35,000, with the interest. The execu-

Lesley *v.* Johnson.

tors of the last will and testament of John F. Delaplaine duly assigned the said mortgage, with the bond therein referred to, on the 25th day of December, 1857, to the New York Life Insurance and Trust Company, which company assigned the same to William V. Brady, on the 7th of January, 1858, who afterwards assigned the same to George Lesley, the plaintiff in this action.

The defense set up in the answers is usury; a corrupt, usurious and unlawful agreement which vitiates and discharges the contract for the payment of the money mentioned in the bond and mortgage, so that it cannot be enforced against the mortgagors or those claiming the premises mortgaged, under them. It is not claimed in the answers that the sum of $4355.55, which was paid to William V. Brady when he took the assignment of the bond and mortgage, is a payment thereon; or that it is a set-off or counter-claim which the defendants have the right to have deducted from the amount due for principal and interest upon the bond and mortgage. The answer claims nothing of the kind. It claims and insists that this sum of $4355.55 was paid to Brady as a premium or bonus for the loan, in addition to the lawful interest to accrue thereon, and that owing to the corrupt and unlawful nature of the contract of loan, nothing whatever is due and payable upon the bond and mortgage. The proof upon the trial also shows that the sum above referred to was given to Brady not as a payment upon the bond and mortgage, but for a very different purpose, to which I shall refer hereafter. I make this explicit statement at the outset, so that it may be seen that a determination of the question of usury disposes of the action altogether.

Usury can only be predicated of a contract. It is an offense or forfeiture created by the statute which declares what shall be the rate of interest for the loan or forbearance of money, goods or things in action, and then proceeds to declare, that "all bonds, bills, notes, assurances, conveyances, and all other contracts or securities whatever, (except bot-

tomry and respondentia bonds and contracts,) and all deposits of goods or other things whatsoever, whereupon or whereby there shall be reserved, or taken, or secured, or agreed to be reserved or taken, any greater sum or greater value for the loan or forbearance of any money, goods, or other things in action, than is above prescribed shall be void." Nothing short therefore of a corrupt and illegal contract in violation of the statute will constitute usury. It must be a contract or agreement for the loan or forbearance of money, goods, or things in action, by which illegal interest is reserved and taken, or agreed to be reserved or taken. Otherwise usury does not exist. The reservation of illegal interest, or the taking or agreeing to take unlawful interest, must enter into or become part and parcel of the contract, in order to bring the transaction within the prohibition of the statute. When a contract for money, legal and innocent in itself, is once made and consummated, it cannot be made usurious and illegal by any subsequent transactions of the parties. These subsequent transactions may of themselves be illegal, and forbidden by law, but they cannot impart the taint and the consequences of usury to an antecedent agreement, fair, and just, and upright in itself. If the obligation under it is to pay a debt, the obligation, with the legal rights resulting from it, remain in all their force, and cannot be discharged by ingrafting upon it some subsequent agreement obnoxious to the charge of usury. If the subsequent agreement has the effect to annul and rescind the antecedent contract, that is quite another thing. But so long as the latter remains in force, usury cannot be imparted to it by the subsequent agreement. Examined in the light of this theory, the defendants have failed to bring this case within the prohibition of the law of usury. The mortgage, as I have already said, is dated November 10, 1852, and the complaint charges that on the same day John F. Delaplaine, the mortgagee, conveyed by deed the mortgaged premises to the defendants, David B. Cox, Elias Johnson and Joseph W. Fuller, and

took back from them the mortgage in controversy, to secure the payment of $35,000 of purchase money with the interest thereon at the rate of seven per cent per annum, at the several times in the mortgage, and bond which accompanied the same, mentioned. This is not denied or controverted in the answer, and there is no charge or pretense that there was any thing usurious or illegal in the sale of the lands, and in the contract for assuring the payment of the purchase money. The usury which is sought to be engrafted on, or rather injected into this contract, occured some five years afterwards, in an arrangement made between the mortgagors and William V. Brady, the assignee of the bond and mortgage, and after very considerable sums of money had been paid by them on account thereof, and is set out in the answers in substance as follows: "That the said William V. Brady at the time of taking the assignment of the said bond and mortgage from the New York Life Insurance and Trust Company, entered into the following corrupt, unlawful, and usurious agreement with the defendants Johnson, Cox and Fuller, and the defendant John C. Cameron, who had acquired some interest in the lands, that Brady would loan them the sum of $27,222.20, the sum due on the bond and mortgage at the time of the assignment to him, until the 10th day of November, 1860, provided the said Johnson, Cox, Fuller and Cameron would pay down to him in cash at the time of the assignment the sum of $4355.55, (being 16 per cent of the sum due on the bond and mortgage,) as a premium or bonus for said loan, in addition to the lawful interest to accrue thereon, and that the same were to be assigned and delivered to Brady by the Life Insurance and Trust Company, and held by him as security for the sum so loaned and for the forbearance to enforce and collect the same, until the 10th day of November, 1860." The proof failed to establish an agreement for a loan of money by Brady to the four defendants named in the answer, or to either of them. The judge found as a fact in the case, what is amply sustained by the

proofs, that the money paid by Brady to the Insurance and Trust Company upon the assignment of the bond and mortgage to him was not, nor was any part thereof loaned by him to the defendants Johnson, Cox, Fuller and Cameron, or to either of them. That there was no agreement for the loan of said money, or any part thereof, to the said defendants, or to either of them by Brady, nor was the assignment of the bond and mortgage taken to cover up and disguise the true nature and character of the transaction, but was taken on the purchase of the said bond and mortgage by Brady, and on payment by him of the whole amount due thereon to the Insurance and Trust Company. The judge also found as a fact in the case, that the sum of $4355.55 mentioned in the answer as the premium or bonus for the usurious loan, was paid by the four defendants named, to Brady, and received by him as the consideration and inducement to take such assignment and execute a covenant extending the time for the payment of the principal sum due on the bond and mortgage, and in consideration that he would from time to time release portions of the mortgaged premises which might be sold by the defendants, from the lien of the mortgage. These findings, which are in accordance with the evidence, (some of it given by one of the defendants himself,) dispose of the question of usury against the defendants. They dispose of it as a question of pleading; for conceding the payment of the $4355.55 to have been illegal, the proof did not correspond with the allegation of the answer, which upon well settled rules it must do to sustain a defense of this character. They also dispose of the defense effectually upon principle, for as there was no agreement for a loan between Brady and the four defendants, as alleged in the answer, there could be no usury unless it could affect and taint with illegality the original contract of mortgage between John F. Delaplaine and the defendants Johnson, Cox and Fuller, which I have already shown it could not do.

Lesley *v.* Johnson.

There is one other aspect of the transaction which I notice, to show how unjust and unconscionable the defense is. George Lesley, the plaintiff, is an innocent purchaser of the bond and mortgage, having paid the full value thereof without reference to the $4355.55 paid to Brady. He purchased at the solicitation of the defendant Cox, who said to him there was something over $18,000 of principal due, and assured him he could have no better investment and no better security for his money. It also appeared that in the contract of the 7th of January, 1858, referred to in the pleadings and proofs, the four defendants, Johnson, Cox, Fuller and Cameron, covenanted under their hands and seals with Brady that there was due and unpaid upon the mortgage $27,222.20, and that there was no set-off, defense or counter-claim thereto. And afterwards, on the 1st of March, 1861, by another instrument under their hands and seals, they again declare and reaffirm ($9000 of the principal having been paid in the mean time) that the sum of $18,222.20 was still due and unpaid for principal. These papers were left with William V. Brady, and exhibited to the plaintiff as an inducement for him to purchase the bond and mortgage. Confiding in these repeated and solemn representations, on the 18th of July, 1861, he took the deed of assignment and paid William V. Brady therefor $19,308.30, being $18,222.20 for principal and the arrears of interest to that date. The defendants will not now be permitted to deny what they then asserted to be true. Whatever might be the real state of the mortgage debt and the sum really due and unpaid thereon, as to the plaintiff and those who might claim under him, the defendants are estopped from disputing that the money paid by the plaintiff was the true sum due and payable at the time. The rule of estoppel *in pais* is founded in the purest morality and justice, and must have a place in every enlightened system of civil jurisprudence. A person who does acts, or makes representations or admissions, designed to influence and which do influence the conduct of another, will be con-

cluded from denying such acts and representations, where such denial will operate to the injury of the person so influenced by them. The acts and representations of the four defendants, Johnson, Cox, Fuller and Cameron, could have no other design than to influence a purchaser of the bond and mortgage, and impress his mind with the thought that the sum of $18,222.20 of the principal, with the interest claimed, was actually due thereon, and the legal presumption is that such was their effect. Good conscience and fair dealing demand that they should be held to the truth of what they asserted.

The judgment of the special term should be affirmed with costs.

[Kings General Term, February 8, 1864. *Brown, Scrugham* and *Lott,* Justices.]