ther than he did into the building; but he did not deny that he had been drinking, or that he was, at the time, under the influence of intoxicating liquors, or that he disobeyed the orders of his superior officers.

It was also urged by the relator's counsel that the commissioner erred in reaching the conclusion that the relator was guilty of the charges preferred against him, inasmuch as he considered—notwithstanding the fact that the same was not offered in evidence—the record of the relator in determining the question of his guilt. A sufficient answer to this suggestion is that the petition upon which the writ of certiorari was issued nowhere assigns this as one of the errors relied upon as calling for a reversal of the action of the commissioner. The petition upon which a writ of certiorari is issued must show upon its face the injury or error complained of, and no error will be considered which is not specifically set out in such petition. People v. Tax Com'rs (Sup.) 26 N. Y. Supp. 941; Same v. Board of Assessors of City of Brooklyn (Sup.) 32 N. Y. Supp. 344; Same v. Barker, 66 Hun, 23, 20 N. Y. Supp. 797. In reaching this conclusion the cases of People v. Roosevelt, 1 App. Div. 577, 37 N. Y. Supp. 488; Same v. York, 50 App. Div. 359, 64 N. Y. Supp. 2, and Id., 52 App. Div. 295, 65 N. Y. Supp. 130, have not escaped our attention. In each of these cases this point was not called to the attention of the court, and, in addition to this, this court has several times held that, when nothing more appears in the return than that the record of the relator was before the commissioner, it will assume that such record was used only for a proper purpose, and no error can be predicated upon its use unless it affirmatively appears that it was improperly used for the purpose of determining the relator's guilt. People v. Roosevelt, 2 App. Div. 498, 37 N. Y. Supp. 1083, affirmed in 151 N. Y. 675, 46 N. E. 1150; Id., 2 App. Div. 536, 38 N. Y. Supp. 27, affirmed in 153 N. Y. 657, 47 N. E. 1110; Id., 17 App. Div. 301, 45 N. Y. Supp. 260. On both grounds, therefore,—(1) because the petition does not allege the use of the record as an error relied upon, and (2) because it does not affirmatively appear that it was improperly used in determining the relator's guilt,—the writ must be dismissed, and the proceedings affirmed, with costs. All concur.

---

(55 App. Div. 570.)

FIRST NAT. BANK OF PENSACOLA v. ANDERSON.

(Supreme Court, Appellate Division, First Department. December 7, 1900.)

1. CONTINUANCE—AFFIDAVIT—SUFFICIENCY.
A co-defendant's affidavit for a postponement of an action on a note for inability to attend failed to show that she had knowledge of any facts material to the issue, or that she took part in any of the transactions connected with the subject of the action, except that she was an accommodation indorser, which was not disputed. *Held*, that the affidavit was insufficient to warrant a postponement, since it did not show defendant to be a material and necessary witness in her own behalf.

2. NATIONAL BANKS—USURY—DEFENSE.
Under the national banking act (13 Stat. 99), imposing a penalty on national banks for taking usury, which can only be collected in an ac-

tion of debt, a defense of usury cannot be set up to defeat a bank's recovery on a note.

3. SAME—APPEAL—USURY—INTEREST RECOVERABLE.

Where usury is set up in a trial of an action on a note, the question as to the amount of interest plaintiff is entitled to recover will not be considered on appeal, where such point has not been raised on the trial.

4. EVIDENCE—ACTION ON NOTE—USURY.

Where usury is set up in an action on a note held by a bank, which it obtained from an officer thereof, an anterior transaction between the maker and such officer, who was not acting as an agent for such bank, cannot be shown to support such plea.

5. BILLS AND NOTES.

Where usury is pleaded in an action on a note, a statement in evidence that, when defendant sold the note a part of the consideration therefor was a certain bonus, is incompetent to establish usury in the note's inception, where such statement is not set up in the answer, though it was admitted in evidence without objection.

6. SAME—BONA FIDE PURCHASER.

An agreement made between an indorser of a note and an indorsee thereof, who subsequently sold the same to the plaintiff, that the note should not be enforced as against the maker or accommodation indorser, cannot defeat the rights of plaintiff where such indorser assured plaintiff he had sold the note as indorsed to the indorsee, at the time of the sale, such indorsee not being agent for plaintiff, who took the note in good faith.

Appeal from trial term.

Action by the First National Bank of Pensacola against Kathleen B. Anderson on a note. From a judgment in favor of plaintiff and an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, PATTERSON, and INGRAHAM, JJ.

H. M. Hitchings, for appellant.
C. E. Rushmore, for respondent.

PATTERSON, J.   Upon the trial of this action and at the close of all the proofs a verdict was directed for the plaintiff. From the judgment entered upon that verdict and from an order denying a motion for a new trial appeal is taken. There is also brought up for review an intermediate order denying a motion made by the defendant, Kathleen B. Anderson, to postpone the trial. That intermediate order must be affirmed. The affidavit upon which the motion was made was insufficient. It did not show that the defendant was a material and necessary witness in her own behalf, for it was not made to appear that she had personal knowledge of any of the facts material to the issues, or that she took part in any of the transactions or negotiations connected with the subject of the action, except that she was an accommodation indorser of the promissory note upon which the action was brought,—a fact which was not disputed. The plaintiff, a national bank located and doing business in the state of Florida, brought this action originally against one Woodbury, the maker of a promissory note for $25,000, and against Kathleen B. Anderson and Malcolm C. Anderson, as

indorsers of that note. The complaint contains the usual and appropriate allegations to charge each of the defendants. The action was discontinued as against Woodbury, and judgment was entered upon a stipulation against Malcolm C. Anderson. The action, being severed, was continued against Kathleen B. Anderson. The case was tried upon issues framed upon her separate answer, the only substantial defenses interposed by her being that she was an accommodation indorser, that the transaction in which the plaintiff took the note was tainted with usury, and that only $6,000 was advanced on the note by the plaintiff. The averment of her answer is that the usury was taken by the plaintiff. The issue as to usury is, by the pleading, limited exclusively to the plaintiff in its acquisition of the note. The affirmative defense of Mrs. Anderson, stated more fully, is that one Woodbury made his promissory note, payable to her order, for $25,000, at 6 per cent. interest, and delivered the same to Malcolm C. Anderson, her husband, who requested her to indorse the note, which she did for the accommodation of Mr. Anderson; that thereafter Mr. Anderson requested the plaintiff, through its officers, to discount the note for him, and to make a loan of money thereon, and that thereupon the plaintiff exacted usury of Malcolm C. Anderson, and entered with him into the unlawful agreement that it would discount the note, and make a loan of money thereon, and would deliver the proceeds thereof to him on condition that he pay the sum of $2,500 as a bonus for the discount, and also interest at the rate of 10 per cent. in addition; and that in pursuance of the agreement Malcolm C. Anderson delivered to the plaintiff the promissory note, and the plaintiff received and took out of the amount of the loan a bonus of $2,500 and 10 per cent., and that the plaintiff failed, neglected, and refused to deliver to Malcolm C. Anderson the balance of the proceeds of the note, but only delivered to him the sum of $6,000, and no more. She further sets forth in her answer that all of the transactions relating to the discount of the note were had with one Knowles, the vice president of the plaintiff, and that in said transaction, as she is informed and believes, Knowles was acting for the plaintiff, and that the moneys paid over to Malcolm C. Anderson by Knowles were its moneys, and that plaintiff was fully advised and aware of the said transaction in all its details, and that it received said promissory note with such knowledge, and that it is not an innocent holder for value, before maturity, of the note sued upon.

Considering the defense of usury under the issues as framed by the pleadings, it would be sufficient to say that that defense is not open to Mrs. Anderson by way of defeating the plaintiff's right of recovery. Under the provisions of the national banking act (13 Stat. 99), taking usury by a national bank does not involve a forfeiture of the debt, either as a penalty or otherwise. The most that could be claimed would be that the contract would be good for what might be lawfully taken, and void only as to the excess. Bank v. Dearing, 91 U. S. 35, 23 L. Ed. 196. By the act of congress referred to there is a penalty imposed for taking usury by national banks, but it can only be recovered in an action of debt. We had

occasion to consider that subject in Caponigri v. Altieri, 29 App. Div. 306, 51 N. Y. Supp. 418. On the trial of this cause it was not suggested to the court that there was a limitation upon the amount of interest the plaintiff was entitled to recover, and, not having been raised below, we cannot consider the point now, even if it were otherwise material in the situation of the proof. There is no real dispute of fact as to the amount advanced by the plaintiff upon this note. Undoubtedly Mrs. Anderson indorsed it for the accommodation of her husband; and if, as alleged in the answer, it were proven that the plaintiff knew that fact, and the amount advanced was only $6,000, or a sum less than the face of the note, the question might arise whether the recovery should have been limited to the sum actually advanced. But such a question does not arise, for the evidence is conclusive that the amount advanced when the bank acquired absolute title to the note was the full sum of $25,000. It is claimed by the defendant that, notwithstanding the condition of the pleadings, the whole history of this note was open to investigation, and that it was made to appear that it had its inception in a usurious transaction anterior to the date at which the plaintiff claimed to have become its owner by discounting it. That anterior transaction was between Mr. Anderson and one Knowles, the same person referred to in the defendant's answer as being the vice president of the plaintiff. We cannot disregard the issue, and pass beyond it, to inquire into the connection of Knowles with the paper prior to its discount by the plaintiff, except so far as relates to his being the agent of the plaintiff in taking the note from Mr. Anderson, and that he was not its agent the evidence abundantly shows.

The history of the note, as disclosed by the record, from the time at which it was indorsed by Mrs. Anderson and delivered to her husband, is substantially the following: An effort was made in October, 1895, by Mr. Anderson, to raise money upon the note. He telegraphed to Knowles (then in Florida), a person with whom he had had many antecedent transactions, asking if Knowles could discount the note, and stating that he would be paid $5,000 on account (of an indebtedness of Mr. Anderson to Knowles) if done at once, and give to Knowles "part of assured profit"; adding that, if Knowles accepted, Anderson would deposit the note with the National Park Bank, New York, and requesting Knowles to authorize his (Anderson's) draft at three days' sight for $5,000. Knowles answered that the best he could do was $2,500 profit, then to be deducted, and, if that would be agreeable, he would accept the draft for $5,000 three days' sight, the remaining $12,500 within thirty days; the indorsed note, as offered, to be lodged with the First National Bank of Pensacola until Knowles' acceptance was paid. Mr. Anderson accepted that proposition, drew a draft for $5,000, which was paid by a remittance made through the plaintiff to a bank in New York, from which latter bank Mr. Anderson received the money. Mr. Anderson deposited the $25,000 note with a New York bank, and it was forwarded to Florida, indorsed, "Pay to the order of Knowles Brothers. Malcolm C. Anderson," and Mr. Knowles

pledged it to Mr. Brent as security for the $5,000 remitted, as mentioned, to Mr. Anderson. Subsequently differences arose respecting the terms upon which Knowles would advance the money. Mr. Brent was the president of the plaintiff, but he individually advanced the $5,000 which was remitted to Mr. Anderson, and took the $25,000 note as security for that loan. The evidence establishes that, whatever the original agreement may have been between Knowles and Malcolm C. Anderson, it was never carried out, but the transaction contemplated by that agreement failed, and until the 4th of February, 1896, the note was merely held as collateral security by Mr. Brent individually for a loan of $5,000, and constituted in Mr. Brent's hands a pledge only to the extent of $5,000. There was no usury in that transaction. Five thousand dollars was advanced on the note. It was received by Anderson. No deduction was made, and the note was not enforceable beyond the $5,000 advanced. But on February 4, 1896, the relations of the parties to the note were entirely changed. On that day Mr. Anderson and Knowles met in the city of New York, and a settlement took place between them of their antecedent business transactions, and at that time an adjustment of their accounts was made, Anderson being discharged from his indebtedness, and in consideration of the settlement Anderson agreed that the $25,000 note should be the property of Knowles. The indebtedness and other items of consideration for the note aggregated something more than $25,000, for Anderson gave, in addition to the $25,000 note, his other and individual note for $165.32. When this settlement was made, and on the same day, Mr. Anderson wrote to Mr. Brent and the First National Bank of Pensacola the following letter:

"I beg to advise you that I have to-day sold to Mr. William Knowles the $25,000 note made by R. W. Woodbury on October 10th, 1895, and indorsed by Kathleen B. Anderson and myself, which note belongs to me. Mr. Knowles will satisfy you for such amounts as you hold against the same at the present time."

This letter recognizes the fact that the $25,000 note was held as security, and is an assurance to Mr. Brent or to the plaintiff that it was then sold to Mr. Knowles. On March 14, 1896, the plaintiff discounted the note for the firm of which Mr. Knowles was a member. Its avails, being its face value minus 8 per cent. interest (that being less than the legal rate of interest in Florida), were passed to the credit of Knowles Bros., and were used in taking up paper upon which that firm was liable to the bank for $23,672.29, and the balance being in cash, $1,327.71. This transaction of the discount of the note on March 14, 1896, is the first transaction in which the plaintiff was directly interested in the note. It paid full value for it. It is urged, however, that it appears in the record by the testimony of Mr. Anderson that when the note was sold to Knowles on the 4th of February, 1896, part of the consideration was a bonus of $2,500. That statement, whether it may have been competent for any other purpose or not, was incompetent to establish usury in the inception of the note, because it was not set up in the answer.

It was not pleaded as a defense, and cannot be given effect to, even though it came into the case without objection. The effort was made to show that Knowles was an agent of the plaintiff, and to confine the plaintiff's recovery to the amount actually advanced on the note. On the whole proof it is quite clear the agency was not established, and the statement of Mr. Anderson concerning the items included in the settlement with Knowles cannot be used as evidence of a defense which was not before the court.

It is further claimed that Knowles, at the time of the settlement made in New York with Mr. Anderson, agreed that the note should not be enforced against Woodbury or Mrs. Anderson. That is not pleaded as a defense; but such an agreement, even if made, could not defeat the plaintiff's right. Knowles, not being the agent of the bank, could not bind it by such a stipulation, and Anderson's assurance to the plaintiff was that he had sold the note as indorsed to Knowles. The bank was entitled to buy it upon that assurance,. which was a statement affecting the whole note, and not any particular party to it. As the indorsement of Mrs. Anderson was intended for the accommodation of her husband, the bank, taking it in good faith, cannot, as a bona fide holder, be prejudiced by the declaration of Knowles testified to by Mr. Anderson.

The judgment and order appealed from should be affirmed, with costs. All concur.