(89 Misc. Rep. 538)

### BROWN v. JONES et al.

(Supreme Court, Trial Term, Saratoga County. March, 1915.)

1. USURY  12—ELEMENTS—KNOWLEDGE OF LENDER.

    Usury can be predicated only of a contract whereby one party agrees to pay, and the other agrees to take, an unlawful premium upon a loan, and not where the lender was ignorant of the usurious agreement.

    [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 23, 24, 146; Dec. Dig.  12.]

2. USURY  117—DEGREE OF PROOF.

    Usury involves crime and forfeiture, and must be strictly proved by the party alleging it.

    [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 328–340; Dec. Dig.  117.]

---

3. USURY ⊙⟱130—REMEDIES OF THIRD PERSONS—SUBSEQUENT PURCHASER.
  One who acquired mortgaged premises by a deed containing a covenant against incumbrances can contest the validity of the mortgage on the ground of usury.
  [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 386–391; Dec. Dig. ⊙⟱130.]

4. USURY ⊙⟱130 — REMEDIES OF THIRD PERSON — SUBSEQUENT PURCHASER — CONVEYANCE SUBJECT OF MORTGAGE.
  A conveyance of premises subject to the lien of a mortgage ratifies the mortgage, though it be usurious.
  [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 386–391; Dec. Dig. ⊙⟱130.]

5. USURY ⊙⟱133—REMEDIES OF PARTIES—WAIVER.
  Where one who purchased property on which a mortgage had been given, without assuming the mortgage, did not set up usury as a defense to foreclose the proceeding, that defense is waived, at least as to everything except the right to a deficiency judgment against the mortgagor.
  [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 401–416; Dec. Dig. ⊙⟱133.]

6. USURY ⊙⟱57—COMMISSION TO AGENT—AGENT OF BORROWER.
  Where a lender applied to an attorney to procure a loan for her, he was her agent for that purpose, though in drawing the paper he was acting for the mortgagee, and payment to the attorney for his services in procuring the loan will not make the contract usurious.
  [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 128, 129; Dec. Dig. ⊙⟱57.]

7. USURY ⊙⟱117—EVIDENCE —INTENT OF BORROWER.
  In a suit to foreclose a mortgage, evidence *held* not to show that the mortgagor knew that her agent to procure the loan intended to procure it through the agent of the mortgagor, or to pay him any part of the commission, and therefore not to show a usurious agreement.
  [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 328–340; Dec. Dig. ⊙⟱117.]

8. USURY ⊙⟱56—ELEMENTS—KNOWLEDGE OF LENDER.
  Where the lender gave two checks for the amount loaned, payable to the borrower, and the latter indorsed one of them, which was for one-third of the amount borrowed to her agent, who paid one-half thereof to the lender's agent, and there was no evidence that the lender knew of the payment to her agent or received any benefit therefrom, the defense of usury cannot be relied on to defeat the mortgage.
  [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 122–127; Dec. Dig. ⊙⟱56.]

9. USURY ⊙⟱37—COLLATERAL AGREEMENT—GUARANTY.
  A person may guarantee the obligation of another, and take whatever price he may obtain therefor, without rendering the obligation usurious.
  [Ed. Note.—For other cases, see Usury, Cent. Dig. § 92; Dec. Dig. ⊙⟱37.]

10. USURY ⊙⟱12—ELEMENTS—KNOWLEDGE OF LENDER—NOTICE.
  Where money was loaned on a mortgage of land which was of doubtful security, but the agents of the borrower and of the lender signed a guaranty of the mortgage, which recited that the consideration therefor was paid by the lender, and there was no evidence to the contrary, the execution of the guaranty does not put the lender on inquiry which would reveal that part of the money loaned was divided between the agents as commission, so as to entitle the borrower to the defense of usury.
  [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 23, 24, 146; Dec. Dig. ⊙⟱12.]

⊙⟱For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit to foreclose a mortgage by Frank H. Brown, as executor of the last will and testament of Frances L. McLean, deceased, against Nettie J. Jones and others. Judgment rendered for plaintiff.

Frank H. Brown, of Ballston, in pro. per.

Walter F. Wellman, of Schenectady, for defendants Nettie J. Jones and Jennie S. Clift.

WHITMYER, J. Plaintiff has brought this action to foreclose a mortgage in the sum of $3,000 on a farm of 102 acres, known as the Russell farm, in the county of Saratoga, given by defendants Cyrus P. Jones and Nettie J. Jones, his wife, to plaintiff's testatrix, Frances L. McLean. The defense is usury. The mortgage was dated March 1, 1910, and was to be paid March 1, 1911, with interest. It was collateral to a bond in the same amount. This, also, was executed by both mortgagors. The farm was the property of Mrs. Jones at the time that the mortgage was given, but has since been conveyed to, and title to it is now in, the defendant Jennie S. Clift. Payment of the mortgage was guaranteed by defendant Wiswall, an attorney, and by James L. Scott, also an attorney. Scott is now dead, and his estate is represented by defendant Anna M. B. Scott, his widow, as executrix. The interests of the other defendants do not affect the issue. The complaint asks for deficiency judgment against Nettie J. Jones, Wiswall, and Anna M. B. Scott, as executrix. Nettie J. Jones has set up the defense of usury. Wiswall and Mrs. Scott have not answered, and Jennie S. Clift's answer does not set up usury, but is practically a denial of knowledge or information sufficient to form a belief.

[1] Usury can be predicated only of a contract by which one of the parties to it agrees to pay, and the other agrees to take, an unlawful premium upon a loan. 39 Cyc. 920; Phillips v. Mackellar, 92 N. Y. 34. To constitute it, both parties must be cognizant of the facts which make out the usurious contract. Lesley v. Johnson, 41 Barb. 359, 361; Powell v. Jones, 44 Barb. 524; Guggenheimer v. Geiszler, 81 N. Y. 293; Morton v. Thurber, 85 N. Y. 550. And to make out a case against a lender, in a case where the usurious loan has been made by his agent, it must be made to appear that the lender had knowledge of the usurious agreement and assented to it. Phillips v. Mackellar, supra; Stillman v. Northrup, 109 N. Y. 473, 17 N. E. 379.

[2] Usury involves crime and forfeiture, so that it must be strictly proved, and cannot be established by mere surmise and conjecture, or by inferences entirely uncertain. Fellows v. Longyor, 91 N. Y. 308; Stillman v. Northrup, supra. The burden of proving it is on the party alleging it, and if, upon the whole case, the evidence is just as consistent with its absence as with its presence, then the party alleging it has failed. Stillman v. Northrup, supra.

[3] Jennie S. Clift now holds the title to the farm. It was conveyed to her February 2, 1911, by a full-covenant deed, which contained a covenant against incumbrances. The deed states that the consideration was $1 and other good and valuable considerations. It does not refer to the mortgage in any way. From this it would seem that the parties intended that Jennie S. Clift should take the same rights in the

property that Mrs. Jones had and that the rights of the latter to contest the validity of the mortgage because of usury passed to the former. 39 Cyc. p. 1067; Shufelt v. Shufelt, 9 Paige, 137, 145, 37 Am. Dec. 381. In the Shufelt Case the court says:

"In the ordinary case of the giving of a usurious mortgage by the owner of the mortgaged premises, the statute having declared the usurious security void, the owner of the premises, of course, has the right to sell his property or to mortgage the same, as though such void mortgage had never existed. And the purchaser, in such a case, necessarily acquires all the rights of his vendor to question the validity of the usurious security; for, if the original mortgagor had not that right, the premises would, to a certain extent, be rendered inalienable in his hands, notwithstanding the incumbrance thereon was absolutely void as to him. He may, however, if he thinks proper to do so, elect to affirm the usurious mortgage, by selling his property subject to the payment or to the lien of such mortgage. And the purchaser in that case takes the equity of redemption merely, and cannot question the validity of the prior mortgage on the ground of usury."

[4] A conveyance subject to the lien or to the payment of the mortgage would have been a ratification of it, whether usurious or not. 39 Cyc. p. 1068; Dalton v. Smith, 86 N. Y. 176; Freeman v. Auld, 44 N. Y. 50; Shufelt v. Shufelt, supra. The deed to Jennie S. Clift did not refer to the mortgage, and contained a covenant against incumbrances. Under the Shufelt Case, therefore, it seems that the right to question the validity of the mortgage passed to her.

[5] But her answer is, in effect, simply a general denial, and does not set up usury, so that it would seem that the defense has been waived. Watson v. Bailey, 9 N. Y. Super. Ct. 509; Mechanics' Bank of Williamsburgh v. Foster, 44 Barb. 87; First National Bank of Pensacola v. Anderson, 55 App. Div. 570, 67 N. Y. Supp. 434; Whitehead v. Heidenheimer, 57 App. Div. 590, 68 N. Y. Supp. 704. At any rate, it has been waived so far as she is concerned. Mrs. Jones has set it up. She is liable for any deficiency, and deficiency judgment has been asked against her. Under the Shufelt Case, it would seem that the defense is not available to her. A Nebraska case holds that it is. 39 Cyc. p. 1063; Male v. Wink, 61 Neb. 748, 86 N. W. 472. That case decides that the defense is available to a mortgagor, although he has sold the mortgaged premises, if he is made a party to the suit and is subject to deficiency judgment. The precise question, so far as I have been able to find, has not been decided in·this state. In any event, if the defense is available to her, it is clear, in view of the fact that Jennie S. Clift, at least, has waived it, that it can inure to the benefit of Mrs. Jones only, and to the extent only that she shall be liable for any deficiency.

[6] Now, Jones, acting for Mrs. Jones, applied to Wiswall to procure the loan. He did not apply to or see Mrs. McLean. Wiswall undertook to procure it, and thus became and was the agent of Mrs. Jones to that extent. While the work of making a search, of drawing the papers, of attending to their execution and recording, and of sending them to Scott, was for the benefit of Mrs. McLean, yet that did not make Wiswall the agent of Mrs. McLean in the whole matter. She did not employ him to seek an investment for her; but Mrs. Jones employed him to procure a loan. Jones v. Gay, 139 N. Y. Supp. 158.

Mrs. Jones, therefore, became justly obligated to pay him for his services in procuring it, and such payment, in itself, could not render the transaction usurious. 39 Cyc. p. 978; Baldwin v. Doying, 114 N. Y. 452, 21 N. E. 1007; Guardian Mutual Life Ins. Co. v. Kashaw, 66 N. Y. 544; Terminal Bank v. Dubroff, 66 Misc. Rep. 100, 120 N. Y. Supp. 609.

[7] Jones did not say anything, on his direct examination, about Wiswall's compensation, but said, on cross, that he applied for $3,825 or $3,800, in round numbers, and told Wiswall to make the mortgage for $4,000 and to take a fee of $200, and that Wiswall replied that the proposition was not very attractive. Wiswall testified that Jones offered to pay him $1,000 for his services. Jones testified, further, that there was only one check, and that for $2,000, payable to Mrs. Jones alone; that Wiswall said, when he turned it over, that he could let him have only $2,000, but might squeeze $500 more in a few days; that Wiswall did not turn over any more money, but told him, a few days later, that he had been obliged to give Scott $500 and had retained $500 for himself. Mrs. Jones testified that there was only one check, and that it was payable to herself alone. Wiswall testified that there were two checks, one for $2,000, and one for $1,000, that both were made payable to both mortgagors, and that the one for $1,000 was indorsed by them to him. There were two checks, they were for the amounts and were payable as stated by Wiswall, and the one for $1,000 was indorsed specially to Wiswall. Clearly Jones did agree to pay Wiswall $1,000 for his services.

Jones testified, further, that Wiswall told him, at the time of the application, that the security offered was insufficient; that he replied that Mrs. Jones might consent to give a chattel mortgage and make it sufficient; that Wiswall said that he would see Mrs. McLean about it, and told him later on the same day that he could not get $3,800; that he then asked him to get as much as possible; that Wiswall said that he would have to see his partner, Scott, and told him later that he could get $3,000; and that he thereupon directed Wiswall to go ahead. Wiswall testified that Jones applied for $2,000; that he told him that the farm was not sufficient as security, subject, as it was, to a prior mortgage upon which the sum of $500 was due; that Jones pleaded, and offered to pay $1,000; that he told him that he would have to get the money from some client and guarantee it as before; that he could not get it any way, and did not believe that Scott would want to undertake it. Scott was attorney and agent for Mrs. McLean, with power to invest for her according to his best judgment, to receive and collect her moneys, to satisfy her mortgages, and generally to do anything with reference to her property which she could do. Wiswall had never done any business for Mrs. McLean and did not see her in the matter. Moreover, he was not a partner of Scott, although it is true that he and Scott had guaranteed another loan from Mrs. McLean to Mrs. Jones.

It is necessary, therefore, in view of the errors in the testimony of Mr. and Mrs. Jones, to adopt Wiswall's version. Wiswall telephoned to Scott, and told him about his talk with Jones. Scott agreed to make

the loan for Mrs. McLean, and he and Wiswall agreed to guarantee it and to divide the sum of $1,000 equally. The loan was made. The checks representing it, one for $2,000, the other for $1,000, payable to the mortgagors, were sent to Wiswall. They indorsed the one for $1,000 over to him. He deposited it, and sent his own check, dated March 1, 1910, for $500, to Scott, who deposited same to his own credit on the next day. Jones did not return for the additional $500, which he says that Wiswall told him he might squeeze out, until a few days after the transaction, at which time he claims that Wiswall said that he had been obliged to give $500 to Scott. So that the evidence fails to show that Jones knew, absolutely at least, that Wiswall intended to apply to Scott, or that he knew that Scott was to receive any money, or that he authorized it, or authorized Wiswall to pay more than the legal rate, and is, therefore, insufficient to show an usurious agreement. Phillips v. Mackellar, supra.

[8] In the next place, the amount loaned was $3,000. It was Mrs. McLean's money, and was advanced by means of two checks, one for $2,000, the other for $1,000, drawn by Scott, as her attorney, against an account in her name in a New York City bank. The checks were dated March 1, 1910, and were made payable to both mortgagors. They indorsed the one for $1,000 to Wiswall, and Scott received $500 of this amount through Wiswall's check, dated and sent to him March 1, 1910, and deposited by him to his own credit March 2, 1910. There is no evidence that Mrs. McLean authorized or assented to the receipt of this money, or that she received any benefit from it. Jones and Wiswall did not communicate with her, and there is no evidence that Scott consulted her about the transaction. Scott died January 9, 1912. The foreclosure was commenced March 1, 1912. An extension until December 1, 1912, was granted on March 20, 1912. Mrs. Jones wrote to Mrs. McLean in November, 1912, asking for a further extension after December 1, 1912, and stating that she would convey the property if she failed to pay within that extension. This was answered by Brown, who had then become Mrs. McLean's attorney. Mrs. McLean died February 5, 1913. Brown was then appointed executor of her will. As such, he was substituted as plaintiff in the action, after which the summons and complaint therein were served on Mrs. Jones, who then for the first time, so far as appears, made her claim of usury. Clearly, Mrs. McLean did not have actual knowledge.

It is claimed, however, that the powers of Scott, under the power of attorney, were so broad that knowledge on her part must be implied. The cases of Hyatt v. Clark, 118 N. Y. 563, 23 N. E. 891, Bliven v. Lydecker, 130 N. Y. 106, 28 N. E. 625, and Schwarz v. Sweitzer, 202 N. Y. 8, 94 N. E. 1090, are cited in support of this proposition. The case of Hyatt v. Clark, supra, did not involve usury. The principal in the case of Bliven v. Lydecker, supra, advanced the sum of $3,600, and received a mortgage for $4,000. In an assignment of the mortgage, she covenanted that the sum of $4,000, with interest, was due thereon. So that it was presumed that she had had the benefit of the $400 of usury. This case was followed by the court in Schwarz v. Sweitzer, supra. The principal in the Schwarz Case was advised that her son had retained $160 for himself, out of a loan of $960, on the

day after the loan was made, and thereafter collected interest on the full amount. Moreover, it did not appear that the borrower, or her agent, knew that the principal's son was to retain the $160 for his own benefit. In Braine v. Rosswog, 13 App. Div. 249, 42 N. Y. Supp. 1098, a father and his daughter lived together, and the daughter signed checks on a bank for money deposited in her name, which the father loaned at usurious rates, the daughter sharing in the profits, and it was held that an action to cancel the usurious security could be maintained. The principal in each of these cases derived a benefit from the transaction. The rule is broadly stated in 39 Cyc. p. 975, as follows:

"When the agent making loans on behalf of his principal is vested with general powers as broad as those the principal might exercise if present in his own person, the principal will be held responsible for all acts done by such an agent, and a usurious commission taken by the agent, although without real knowledge of the principal, will affect the whole transaction with usury."

Bliss v. Sherrill, 24 App. Div. 280, 49 N. Y. Supp. 561, is the only New York case cited as authority. There a husband, empowered by his wife to loan money on her account, negotiated through certain brokers a loan of $50,000, secured by a bond and mortgage, executed in favor of the wife by the borrower, who at the same time agreed to pay a bonus of $10,000, half of which was to go to the brokers and the remainder to the husband, and this remainder was in fact deposited by him in the name of his wife, and was stated by him to represent a payment upon an indebtedness of $54,000, owing by him to her, from which account a considerable part of the money advanced upon the mortgage had been drawn, and it was held that the wife could not plead ignorance of the usurious character of the loan. In the trial court the judgment was for plaintiff, and the Appellate Division reversed. The second trial also resulted in a judgment for plaintiff, which, however, was affirmed by the Appellate Division. Bliss v. Sherrill, 52 App. Div. 613, 64 N. Y. Supp. 809. On the second trial, husband and wife both testified that the latter did not have any knowledge of the transaction. And while the court, on the second appeal, stated that it adhered to the opinion expressed on the first appeal, the result was practically a reversal.

In Phillips v. Mackellar, supra, where an agent, upon lending the money of his principal, exacted a bonus, without his authority, knowledge, or consent, and the principal received the sum so paid, it was held that usury was not established, unless it was shown that the money was paid as a usurious consideration for the loan. And in Stillman v. Northrup, supra, it was held that it is not sufficient to show that a loan was made by an agent of the lender and that such agent exacted and received, for his own benefit, a sum of money over and above legal interest, as a condition of the loan, but that it is necessary to show that he took it with the knowledge and assent of the latter. And it was also held that the defense, involving crime and forfeiture, cannot be established by surmise and conjecture or by inferences entirely uncertain. It seems clear, therefore, that the defense cannot be established by implication, and that the statement in Cyc. is too broad.

[9, 10] It is claimed, finally, that the guaranty of payment by Wiswall and Scott required inquiry on the part of Mrs. McLean. A person may sell his credit to another, by guaranteeing the obligation of that other, and may take whatever price he may obtain for the service thus rendered. 39 Cyc. p. 940. But if it appears, from all the circumstances, that the parties intended a usurious loan, the transaction will be held unlawful. Palmer v. Jones, 69 Hun, 240, 23 N. Y. Supp. 584. At the time that the mortgage was given, Mrs. Jones was the owner of an apartment house in the city of Brooklyn, which was subject to a mortgage of $170,000. She was in default on this, and foreclosure had been threatened. Her other real property had all been mortgaged to such an extent that none of it was available for a further loan, except the farm in question. One piece, in Saratoga county, was subject to a mortgage of $7,000, which was held by the Adirondack Trust Company and had been guaranteed by Wiswall. Another piece, the Kilmer farm, in said county, was subject to a mortgage of $5,300, which was held by Mrs. McLean and had been guaranteed by Wiswall and Scott, and upon which Mrs. Jones had defaulted, or was in default. And the third piece, the farm in question, was subject to a mortgage of $1,000, upon which the sum of $500 remained due. In addition, she had some stock, farming implements, and personal property, fairly worth the sum of $2,500. Her personal property, so far as appears, was clear. Jones, at one time a real estate dealer in New York City, says that the farm in question was fairly worth $3,500, but Wiswall says that it was worth not more than $2,000. Jones claims that he applied for $3,800, and offered the farm alone as security. He claims, further, that the personal property was not spoken about, until Wiswall stated that the farm was not sufficient as security. At the outset, he testified that the chattel mortgage proposition came from himself, then that Wiswall required it.

That a real estate dealer would expect to get $3,800 on a farm worth $3,500 and already subject to a mortgage, upon which the sum of $500 remained due, seems unlikely. Wiswall testified that the amount asked for was $2,000. The equity in the farm, according to his estimate, being $1,500, and the personal property being fairly worth $2,500, the security would be $4,000 for a requirement of $2,000, plus the $1,000 agreed to be paid to Wiswall. This left a margin of $1,000. Wiswall claims that he told Jones that it would be necessary for him to guarantee the mortgage, just as he had before. Jones claims that nothing was said about a guaranty. But Jones knew that Wiswall and Scott had theretofore guaranteed the mortgage upon the Kilmer farm, and that Wiswall had guaranteed the Adirondack Trust Company mortgage, so that it is probable that Wiswall told him that it would be necessary to guarantee this one.

The security offered was a second mortgage on a farm, the equity in which was about $1,500, and a chattel mortgage on personal property worth about $2,500. The margin between the amount advanced and the estimated value of the security was only $1,000. The security was doubtful. In this connection it may be noted that it has been

. greatly impaired by the sale of $250 worth of standing timber and nearly all of the personal property, so that it is probable that the guarantors will be required to make up a deficiency. The guarantee recites that the consideration for it came from Mrs. McLean. It may be that she consented to make the loan on the condition that Scott should guarantee it and that Scott associated Wiswall with himself in the guaranty. Whether Mrs. McLean paid for it or not does not appear. If she did not, the burden of proving the fact was on Mrs. Jones. Plaintiff, therefore, is entitled to judgment.

By the agreement of March 20, 1912, made after the commencement of the action, by which the time for the payment of the principal and interest of the mortgage was extended to December 1, 1912, Mr. and Mrs. Jones agreed that the sum of $2,920.84, principal and interest, was then due. The agreement recited the payment by Mr. and Mrs. Jones of the sum of $75 to apply on plaintiff's costs, and provided that, if the balance of principal, interest, and costs should be paid on or before December 1, 1912, the action should be discontinued without further costs. The sum of $75 was figured as upon a settlement before judgment and was to apply on the costs, if there should be no settlement. The mortgage was not paid on December 1, 1912. So that plaintiff is entitled only to the balance of the costs.