[Civ. No. 8747. First Appellate District, Division One.—March 29, 1933.]

ARTHUR C. VAUGHAN et al., Appellants, v. PEOPLES MORTGAGE COMPANY (a Corporation) et al., Respondents.

634

Arthur C. Vaughan, *in pro. per.*, and Arthur William Green for Appellants.

Janeway, Beach & Hankey, Gold, Quittner & Veale, Joseph K. Horton and Benjamin F. Bledsoe for Respondents.

GEARY, J., *pro tem.*—Appellants brought their action to restrain respondent Peoples Mortgage Company from selling certain real property situated in Los Angeles County under a second and a third deed of trust thereon. Appellant Arthur C. Vaughan and Libbie L. Vaughan are husband and wife; appellant Jessie Vaughan is the maiden sister of Arthur C. Vaughan. The appellants' action is based upon the ground that the loan from Peoples Mortgage Company, secured by the second deed of trust, was usurious, and upon the further ground that the real property threatened to be sold was the community property of appellants Arthur C. and Libbie L. Vaughan, which fact it is alleged respondent Peoples Mortgage Company knew, and that the same was subjected to the lien of the second and third trust deeds without the knowledge or consent of appellant Libbie L. Vaughan. Appellants thereupon prayed that the court determine the legality of the second and third deeds of trust and restrain the threatened sale of the premises described therein until after the trial of the action. Respondent Peoples Mortgage Company filed its answer to the complaint denying all of the material allegations thereof. By way of an amended cross-complaint it alleged upon information and belief that the loan made by respondent Protective Building and Loan Association and secured by a first deed of trust upon the real property described therein was usurious, and prayed for an accounting of the sums due under the first deed of trust, and that a sale of the premises thereunder be restrained until the rights of the prospective parties under their deeds of trust could be legally determined.

Answering the amended cross-complaint of the above-named respondent, the respondent Protective Building and Loan Association denied all of the material allegations thereof, and particularly that the loan secured by the first

deed of trust was usurious. Appellants filed their answer to the amended cross-complaint and therein allege the loans secured by both the first and second deeds of trust are usurious, and pray for an accounting and for damages equal to treble the interest paid upon the first and second deeds of trust, and that sale under said trust deeds be enjoined until trial. The trial court held against appellants on each and every issue and from the judgment thereon appellants prosecute this appeal upon a bill of exceptions, wherein they designate ''eight points'' in addition to the exceptions specified for a reversal of the judgment herein. We shall take up the grounds urged by appellants as requiring a reversal in the order in which they are urged in their opening brief.

The evidence reveals with reference to the loan secured by the first trust deed that on or about April 1, 1925, appellant Arthur C. Vaughan was introduced to one R. N. Burgess, vice-president of Protective Building and Loan Association, and was advised by the latter that he would make a loan of $25,000 on the real property involved herein for six months at eight per cent, a bonus of ten per cent, and a commission to one Belcher and one Neville, loan agents, the interest to be paid in advance and the interest and commissions to be added to the loan. Appellant, according to his testimony, informed Burgess that he (appellant Arthur C. Vaughan) was securing the property as a personal investment, and that he intended placing the record title in his sister Jessie Vaughan ''in trust for me''; that Burgess said he would have no objection to this arrangement and thereupon made out an order to the treasurer of Protective Building and Loan Association, directing the issuance of a check in the sum of $4,841.20 to Jessie Vaughan. A check for this amount payable to Jessie Vaughan was issued, signed by R. M. Green and D. A. Hayes, president and treasurer respectively of said loan association, and was by Jessie Vaughan indorsed, so as to render the same payable to the order of ''R. N. Burgess, Trustee''. This check was indorsed ''R. N. Burgess by M. C. Grant'', M. C. Grant being the secretary of R. N. Burgess, and cashed. Thereupon on or about April 5, 1925, a promissory note for the sum of $29,801.20, a deed of trust securing payment thereof and an application for the purchase of stock by

Jessie Vaughan was taken to the latter for her signature and executed by her. The application for purchase of stock, directed to R. N. Burgess, provides in part:

"I, (or we), hereinafter referred to as the Purchaser, hereby authorize R. N. Burgess, hereinafter referred to as the Seller, to procure a loan of Twenty-nine thousand Eight hundred One Dollars twenty cents ($29,801.20), payable six (6) months after date, with interest paid in advance . . . and in the event he procures said loan, or any loan acceptable to me, the Purchaser agrees to procure title insurance, fire insurance, etc., and to execute all papers that the Seller may require, all to his satisfaction, including a first lien on the following described property: [There follows a description of the real property involved herein.]

"Therefore, in consideration of the efforts of the Seller in obtaining said loan, the Purchaser hereby agrees to purchase of him twenty-six (26) shares of the capital story [stock] in one of the companies hereinafter referred to, at a price of Two Hundred Dollars ($200.00) per share, and directs the Seller to allocate the purchase of stocks in any one, or more of the following companies, as he elects, and from his or his associate holdings.

"The Agricultural Credit Corporation—Common

"Protective Building and Loan Association—Common

"The Home Foundation Company—Preferred."

Then follow provisions to the effect that if the purchaser does not pay the balance of the purchase price of the shares the subscription shall be canceled and the seller entitled to retain the $2,600 paid on account, as liquidated damages, and the seller agrees in the event the balance is not paid to cancel the entire obligation. It is further declared that the stock purchase is made to assist in procuring the loan, to help the seller maintain the capital of the companies, and for numerous other reasons, followed by

"Statement of Facts

"For the purpose of procuring this loan, the Purchaser certifies that the proceeds are to be used only as shown below and directs R. N. Burgess to pay, or cause to be paid such items, charges and expenses, as he deems necessary to procure said loan, . . . and to apply the proceeds as stated below:

| Pay to | Address | For | Amount |
|--------|---------|-----|--------|
| Protective Building & Loan Assn | | | |
| | | Advance Interest | $1,201.20 |
| R. N. Burgess | | Acct. of Stock | 2,600.00 |
| P. W. Neville | | —————— | 520.00 |
| F. S. Belcher | | —————— | 520.00 |

In escrow . . . to complete the purchase of said Lot .....................................15,000.00

In escrow . . . when a certain 19-room apartment house . . . has been moved to and located on the above described mortgaged property, completed and ready for occupancy and free of liens .................................... 9,960.00"

The Agricultural Credit Corporation and the Home Foundation Company—which name was later changed to Farm Home & Loan Company—were operated by R. N. Burgess, and the offices of these corporations were in the same suite with Protective Building and Loan Association. No evidence was offered as to the value of these stocks, but Jessie Vaughan testified she did not want them, and the payment therefor was not completed. Although Burgess was only vice-president of the last-named corporation, he was apparently the dominating influence therein. Both Green, the president, and D. A. Hayes, the secretary and treasurer of Protective Building and Loan Association, testified that they signed the check for $4,841.20 by reason of the order therefor in writing of Burgess. Hayes, the secretary and treasurer, further testified that he did not know Burgess was receiving any of the proceeds of this check, nor that he was purporting to sell any stock; that he, Hayes, had nothing to do with the negotiations which resulted in the making of this loan.

The minutes of the association offered in evidence disclose that the Vaughan loan was approved by the board of directors on July 23, 1925, almost four months after the same was made. R. N. Burgess was not called as a witness. It appears that the Protective Building and Loan Association received no part of the "bonus" or commission or of the stock subscription paid to Burgess. The foregoing is a *résumé* of the evidence contained in the bill of exceptions concerning the loan secured by the first deed of trust.

The trial court found in regard to the same: " . . . nor is it true that, in making said loan or in accepting said promissory note and trust deed, said Protective Building & Loan Association exacted from plaintiffs, or either of them, a bonus, which, together with the interest agreed to be paid upon said loan, amounted to more than 12% interest per annum upon said loan; nor is it true that the making of said loan or the execution or delivery of said note or trust deed was, or either of them were, contrary to the provisions of section 3757 of the General Laws of the State of California, known as the 'usury law'."

There being practically no dispute on the facts hereinbefore set forth, must it be held as a matter of law that there was usury in the transaction with respondent Protective Building and Loan Association, even if the application for the purchase of stock was a mere subterfuge adopted by Burgess to exact a personal bonus for the loan to Jessie Vaughan?

R. N. Burgess was the sole representative and vice-president of Protective Building and Loan Association in its negotiations with Jessie Vaughan, and hence that corporation is presumed to have had knowledge of all the facts and circumstances surrounding the negotiations for the loan. (*McKenney* v. *Ellsworth,* 165 Cal. 326, 329 [132 Pac. 75]; *Williams* v. *Haashagen,* 166 Cal. 386, 392, 393 [137 Pac. 9]; *Palo Alto etc. Assn.* v. *First Nat. Bank,* 33 Cal. App. 214, 224 [164 Pac. 1124]; *State Bank* v. *Adams,* 142 Minn. 63 [170 N. W. 925, 927].) This presumption is a disputable one. (*Palo Alto etc. Assn.* v. *First Nat. Bank, supra.*)

Will mere presumptive knowledge of this fact upon the part of Protective Building and Loan Association render the loan usurious as to it? There are two lines of authority on this proposition. In the rather early New York case of *Condit* v. *Baldwin,* (1860) 21 N. Y. 219 [78 Am. Dec. 137], the court said:

"It is the essence of an usurious transaction, that there shall be an unlawful and corrupt intent, on the part of the lender, to take illegal interest, and so we must find, before we can pronounce the transaction to be usurious. . . . In this case, there is nothing on the face of the contract, reserving more than legal interest. . . . The rule that when an agent commits a wrong in the transaction of the business of

his principal, the principal is liable for the injury produced by such wrong, has no application to the present case. That rule cannot apply, where the agent, when committing the wrong, is bargaining on his own account, for his own private advantage exclusively, and this is known to the person with whom he is bargaining; it could only apply where the person dealt with is deceived or wronged, which in no sense is the present case. . . . When an act is done for another, by a person not assuming to act for himself, but for such other person, though without any precedent authority whatever, it becomes the act of the principal, if subsequently ratified by him. In that case, the principal is bound by the act, whether it be for his detriment or his advantage, and whether it be founded on contract or tort, to the same extent and with all the consequences as if done by previous authority. But when the agent did not assume to act for another, but acted for himself and for his own benefit, a subsequent ratification does not bind the principal."

It is true that the decision in that case was by a divided court. The principle therein enunciated, however, was applied to the relationship of principal and agent, and the same is properly applicable herein. (*Palo Alto etc. Assn.* v. *First Nat. Bank, supra.*) This rule of law is approved in the later cases of *Bell* v. *Day*, (1865) 32 N. Y. 165, 167, and *Algur* v. *Gardner*, (1873) 54 N. Y. 360, 365. In the subsequent case of *Terminal Bank* v. *Dubroff*, 66 Misc. Rep. 100 [120 N. Y. Supp. 609, 610], a borrower consulted W. P. Reid, an attorney who was likewise president of the Terminal Bank, and vice-president of Williamsburgh Trust Company, and solicited him to secure a loan of $6,000 in consideration of a $600 personal bonus. Reid secured the money from the bank of which he was president, the check therefor being issued to "W. P. Reid, Trustee for L. Harry Fisher", a dummy, and the bond and mortgage to secure the same was executed to "L. Harry Fisher" and by him assigned to the bank. Reid actually received a commission of $550. Upon the bank's suit to foreclose the mortgage the borrower raised the issue of usury as a defense. The court held: "There is no evidence that Reid acted in this transaction as an officer of the Terminal Bank, or that the latter had any knowledge of the agreement between him and Dubroff regarding the commission, or that the bank ever

received any part thereof. In order to establish the defense of usury, *it must be shown that plaintiff had knowledge of the usury and that it was taken with its consent. Philips* v. *Mackellar*, 92 N. Y. 36; *Dilmars* v. *Sackett*, 92 Hun, 381 [36 N. Y. Supp. 690].'' (Italics ours.)

This rule has been reaffirmed by later cases from that jurisdiction so that the rule in New York appears to be definitely settled that in order to render a loan usurious, knowledge or consent and ratification or profit on the part of the lender must be proved.

''The great weight of authority supports the doctrine that a loan is not rendered usurious by the lender's agent charging the borrower, for his own benefit, a commission or bonus for procuring the loan, in excess of the maximum legal rate of interest, where such charge is made without the lender's knowledge or consent, either express or implied, and is not ratified or shared in by him.'' (21 A. L. R., pp. 841, 855, 856; *Braine* v. *Rosswog*, 13 App. Div. 249 (1897) [42 N. Y. Supp. 1098]; *Brown* v. *Jones*, 89 Misc. Rep. 538 [152 N. Y. Supp. 571, 573, 46 Am. St. Rep. 197, 198].)

Nor in the case of a corporation will a loan be deemed usurious, if the officers of the lending corporation have taken a usurious bonus or commission for their own personal benefit, although the burden of proof may be cast upon the corporation to prove that it has not received any part of the usurious bonus or commission.

''Where an individual wishes to invest money through an agent, the integrity of the loan is not affected by the act of the agent in charging usury, unless the lender has knowledge of the transaction or assents to it or receives some benefit from it. (*St. John* v. *Fowler*, 229 N. Y. 270, 273 [128 N. E. 199].) We think the rule is different in the case of a corporation, which cannot act or acquire knowledge except through its officers and agents. Here we have a continuous transaction undertaken and carried on by authorized officers in its behalf and interest. . . . At no time was anything said about a fee or profit to the officers individually. Payment to the executive officers in the regular course of the transaction *presumptively* is payment to the corporation, and the knowledge of the officers is constructively its knowledge. (Citing cases.) . . . The mortgagors were not to be held responsible if the officers should

convert the money payable to the corporation. *McCarthy v. Liberty Nat. Bank, supra.* ([73 Okl. 275 [175 Pac. 940, 7 A. L. R. 137].) *No attempt was made on the trial to call these officers to prove that the taking of the bonus was a personal transaction. In fact, the only proof that the corporation did not actually receive the bonus was the production of a book kept by the plaintiff and containing a record of the mortgage, in which it did not appear that the money was received. This was practically no proof at all."* (Italics ours.) (*New York Mortgage Co.* v. *Garfinkle*, 231 App. Div. 327 [247 N. Y. Supp. 313, 315, 316].)

The above rule is generally accepted in other jurisdictions. In the case of *Chicago Fire-Proofing Co.* v. *Park Nat. Bank*, 145 Ill. 481 [32 N. E. 534, 535], Parker, the president of a bank, compelled a borrower from the bank to pay him a commission in addition to the interest paid to the bank, and also to buy from him some worthless stocks, as a condition to obtaining a loan. It did not appear from the evidence that the bank received the commission or was benefited by the sale of the stock. The court held: "If Parker in his individual capacity entered into an agreement under which he was to receive a commission for procuring a loan, and the bank had nothing whatever to do with the agreement and received no part of the money, it could not be charged with usury." (See *Ballinger* v. *Bourland*, 87 Ill. 513, 516 [29 Am. Rep. 69]; *Phillips* v. *Roberts*, 90 Ill. 492, 498; *Boylston* v. *Bain*, 90 Ill. 283, 285.)

The rule in Wisconsin is set forth in the case of *Franzen* v. *Hammond*, 136 Wis. 239 [116 N. W. 169, 128 Am. St. Rep. 1079, 1082, 19 L. R. A. (N. S.) 399], as follows: "It is not within the apparent scope of a legitimate business agency to violate the law. So where an agent loans money, exacting a bonus for himself, the presumption is rather that it is without the knowledge of the principal than with such knowledge."

In Michigan the rule is declared in the case of *Freedman* v. *Katz*, 246 Mich. 296 [224 N. W. 325, 326, 63 A. L. R. 834], wherein the court says: "The great weight of authority is that *a loan is not rendered usurious by the lender's agent charging the borrower, for his own benefit, a commission or bonus for procuring the loan, in excess of the maximum legal rate of interest, where such charge is made*

*without the lender's knowledge or consent, either expressed or implied, and is not ratified or shared by him.* (21 A. L. R. 841, note.) However, such knowledge and consent may be implied from circumstances. . . . Once general loan agency has been established and excessive exaction shown, the burden shifts to the mortgagee to prove that his agent took the fee for his own benefit, not for the benefit of the principal, and without the lender's knowledge or consent." (See, also, 27 R. C. L. 237, 238; 39 Cyc. 973; 46 Am. St. Rep. 197, 198.) (Italics ours.)

A different rule prevails in some jurisdictions. (*Wade* v. *Citizens' State Bank,* 165 Minn. 396 [206 N. W. 728, 730]; *Federal Mortgage Co.* v. *State Nat. Bank,* (Tex. Civ. App.) 254 S. W. 1002, 1005; *Clarke* v. *Harvard,* (1900) 111 Ga. 242 [36 S. E. 837, 51 L. R. A. 499, 502]; *McCarthy* v. *Liberty Nat. Bank,* 73 Okl. 275 [175 Pac. 940, 7 A. L. R. 137].) However, it would seem the weight of authority supports the rule that mere presumptive knowledge will not suffice to render a loan usurious, but ratification thereof or profit therefrom must likewise appear.

In California in the case of *Niles* v. *Kavanagh,* 179 Cal. 98, 100 [175 Pac. 462, 463, 1 A. L. R. 831], the court stated the rule: "A payment to an agent of the lender is, in effect, a payment to the lender himself. *But where the lender is in no way interested in a charge, or connected with it, the transaction is not to be denounced as usurious.*" (Italics ours.)

That this is the better rule appears beyond question. In this day, when the business of the nation is conducted on a scale that renders combinations of capital necessary to meet the every-day demands of almost every mercantile purpose, the organization of corporations, large and small, has necessarily resulted in order to enable people to meet their business requirements. These corporations vary in size from very small affairs with but few stockholders to huge concerns whose stockholders are numbered in thousands. In each the actual conduct of the corporate affairs is necessarily entrusted to the management of officials, subject to the approval of the directorate and stockholders. It is to be expected that occasionally corporate officials will betray the trust reposed in them by their stockholders and directors for the sake of private gain. Appellants contend that be-

cause Burgess was the sole representative of Protective Building and Loan Association in the transaction, the corporation, as a matter of law, must be held to have knowledge of all the facts.

"The doctrine manifestly cannot be applied to the extent and end claimed by appellant. . . . Such doctrine, of course, could not be maintained, as it would place it within the power of an agent to bind the principal to any course of conduct however foreign or obnoxious to the authority conferred." (*Palo Alto etc. Assn.* v. *First Nat. Bank, supra,* at p. 224.)

■ In the case of a usurious contract the parties thereto are, or should be, fully aware of the terms of the contract; each of the parties knows or is presumed to know that the contract is in violation of the law. They know, or are presumed to know, that an agency can be created only for the performance of lawful acts; that " . . . an officer of a corporation can have no authority to use the corporate property for his own benefit, and such use is notice of lack of authority. (Civ. Code, secs. 2230, 2234, 2306, 2322.)" (*Palo Alto etc. Assn.* v. *First Nat. Bank, supra,* at p. 221; 1 Cal. Jur. 695.)

The reason for the rule is apparent. In the absence of ratification of a usurious transaction or participating in the usurious profit therefrom, to hold a corporation liable for the illegal acts of its officers will result in either opening the door to a wholesale fraud upon stockholders or offering an undue reward by way of treble interest to those who participate in or who may promote illegal transactions. Such a construction of the Usury Law would soon penalize corporate management to the extent that its present day usefulness would be totally destroyed. Of course, if a corporation knowingly ratifies or participates in the usurious profits of a transaction, it will be held to suffer the consequences. Nor are we to be understood as holding that it is incumbent upon one dealing with corporate officials to establish that the corporation ratified or shared in the profits of a usurious transaction. ■ On the contrary, the better rule undoubtedly is that in such a case the usury being established, the burden rests upon the corporation to prove its freedom of usury. In the instant case the undisputed evidence convinces that Protective Building and Loan Association neither

ratified nor profited from the illegal transaction of Burgess. Therefore, assuming that the application for the purchase of stock from Burgess was a mere subterfuge, the loan from respondent Protective Building and Loan Association cannot be deemed usurious as a matter of law.

██ The second and third points urged as requiring the reversal of the judgment have to do with the execution of two second trust deeds and the promissory notes secured thereby. The evidence in regard thereto discloses that on or about April 10, 1925, appellant Arthur C. Vaughan applied to one P. William Neville, a loan broker, to arrange a second loan of $7,500 on the property described in the complaint. Thereafter, a note and deed of trust securing the same bearing date April 28, 1925, payable on or before five months with interest at eight per cent were executed by Jessie Vaughan, payable to P. William Neville. On May 12, 1925, the note and trust deed securing same were assigned by Neville to respondent Peoples Mortgage Company. The evidence discloses that there was actually paid to Jessie Vaughan upon said note the sum of $6,567. Thereafter, and on or about January 12, 1926, Jessie Vaughan applied in writing to respondent Peoples Mortgage Company for a new loan of $17,500 to be secured by a new trust deed in lieu of the then existing second lien of $7,500 upon the property. The evidence shows that at this time respondent Protective Building and Loan Association was threatening a sale of the property under their first deed of trust. The application for the new loan provided, in part, that in the event the loan was approved "you are to dispose of the proceeds thereof as follows:

Protective Building & Loan Association, for credit
 on said trust deed or mortgage note..........$10,000.00
To repay you for advance on purchase of deed of
 trust given by myself to P. W. Neville........ 6,567.00
Interest on said advance to date.............. 525.36
Insurance Premium........................... 60.00
Interest thereon..................... .......... 3.60
Attorney's fees not to exceed................ 344.04"

The application for loan was approved, respondent Peoples Mortgage Company taking a new note for $17,500, secured by a second deed of trust due June 12, 1926, with interest thereon at twelve per cent per annum. There is no dispute

that the money credited to Jessie Vaughan by reason of the new note for $17,500 was expended as directed in the application for the loan, except that instead of paying Protective Building and Loan Association the sum of $10,000, it was paid the sum of $9,749.01, the balance of $250.99 being retained for the payment of taxes on the property.

Subsequently on March 13, 1926, appellant Jessie Vaughan executed and delivered to respondent Peoples Mortgage Company her promissory note for the sum of $300, secured by a third deed of trust upon the property involved herein, payable on or before ninety days after date with interest thereon at eight per cent.

It is the contention of appellants that the loan upon the note for $7,500 was usurious, and that the usury continued as a matter of law into the subsequent loan of $17,500, thereby tainting that transaction. The evidence with reference to the negotiation of the loan of the $7,500 is in direct conflict. According to the testimony of Arthur C. Vaughan the execution and delivery of the note for $7,500 and trust deed to P. William Neville was a subterfuge to avoid the Usury Law; that Neville, the loan broker, was advised by C. Edwin Adams, president of Peoples Mortgage Company, that the loan would be made for a ten per cent bonus and eight per cent interest, but the transaction would have to be handled so as to appear that the Peoples Mortgage Company had purchased the note and deed of trust from Neville at a discount. Vaughan also testified that Adams made a statement of like import to him. Neville was not called as a witness. It was stipulated that, if present, he would testify to the same effect as Vaughan, but the accuracy of his testimony was not admitted.

Against the testimony of Vaughan was that of C. Edwin Adams, president of respondent Peoples Mortgage Company, who stated that his company purchased the Vaughan note from Neville for $6,567, following receipt of a letter from the latter offering to sell the same for $6,750. The letter, undated, was offered and received in evidence. Adams further testified that he never met Arthur C. Vaughan until after Peoples Mortgage Company had purchased the note from Neville; that Vaughan was an entire stranger to the transaction.

If the facts in the transaction regarding the $7,500 note were as testified by Vaughan, the loan was usurious. The trial court, however, evidently believed the testimony of Adams and found there was no usury in the transaction. It is within the province of the trial court to weigh the testimony of each witness in the case in the light of the conduct and manner of the witness upon the stand and the evidence in the case and to determine what weight and credit shall be given to the testimony of any witness. (*Cox* v. *Schnerr,* 172 Cal. 371, 379 [156 Pac. 509].) In view of the direct conflict of the evidence this court is bound by the action of the trial court, if there is substantial evidence to sustain the findings. (*Steinberger* v. *Young,* 175 Cal. 81, 84, 85 [165 Pac. 432]; *Whitelaw* v. *McGilliard,* 179 Cal. 349, 351 [176 Pac. 679]; *Estate of Pepper,* 158 Cal. 619 [112 Pac. 62, 31 L. R. A. (N. S.) 1092]; 2 Cal. Jur. 921.) The court likewise found that the transaction with reference to the $17,500 note was free from usury. It is appellants' contention that the note for $17,500 was tainted with the alleged usury of the $7,500 note; that the usury was continuing. The trial court having found that no usury existed in the last-mentioned note and there being substantial evidence to support the finding, it follows that the court's finding that the $17,500 note is free from usury is proper and cannot be disturbed.

Appellants complain of that portion of the court's finding with reference to the $300 note, which reads: "When said $300.00 became due, said Peoples Mortgage Company made numerous attempts to collect the same from said Arthur C. Vaughan and said Jessie Vaughan", on the ground that "there is not a scintilla of evidence to support such a finding". An examination of the record sustains appellants' contention. However, the finding is not essential to sustain the judgment. It was not required that Peoples Mortgage Company make any effort to collect the note. Demand for payment was not required of the payee. The finding being upon an immaterial matter, the judgment will not be disturbed because of lack of evidence to support the same. (*Benoist* v. *Benoist,* 178 Cal. 234, 236 [172 Pac. 1109]; *Winbigler* v. *Sherman,* 175 Cal. 270, 273 [165 Pac. 943].) The trial court did find that at no time had Jessie Vaughan or Arthur C. Vaughan tendered or offered

to pay the amount due upon the $300 note and the trust deed securing the same. This finding, while contrary to the testimony of appellant Arthur C. Vaughan, is amply supported by the testimony of C. E. Adams, president of Peoples Mortgage Company at the time when the note became due. In view of the law heretofore stated with reference to conflict in testimony, this finding of the trial court cannot be disturbed. The trial court having found there was never a tender or offer upon the part of Arthur C. or Jessie Vaughan of payment of the $300 note, it follows, in view of the fact that there is evidence to support the finding, that appellants' complaint that respondent Peoples Mortgage Company refused payment of money due on the $300 note except as payment upon the $17,500 note is without merit.

▮ Appellants next contend that Protective Building and Loan Association before parting with any money on the $29,801.20 note, and Peoples Mortgage Company, at the time the $17,500 note and trust deed securing same were executed, knew that Jessie Vaughan, in whose name the record title to the property stood, was a mere dummy, and that Arthur C. Vaughan and Libbie L. Vaughan, his wife, were the real owners thereof; that Jessie Vaughan was a mere trustee and the interest of Arthur C. and Libbie L. Vaughan being a community interest, the encumbrances thereon being without the knowledge of Libbie L. Vaughan, were void as to her.

The trial court found that Arthur C. Vaughan and Libbie L. Vaughan, his wife, were not the owners in fee simple of the property in question, but that the same was acquired by Jessie Vaughan by purchase, with funds received by her as the proceeds of a loan secured upon the property. The court further found that at all times material to the transactions involved herein Arthur C. Vaughan represented himself to be, and was, the agent of Jessie Vaughan. Appellants complain that the evidence does not support such findings. It is true that this finding is contrary to the testimony of Arthur C. Vaughan and Jessie Vaughan. However, it is hardly to be expected that either Arthur C. or Jessie Vaughan would admit the relationship of principal and agent. There was offered in evidence on behalf of appellants a general power of attorney from Jessie Vaughan to Arthur C. Vaughan dated April 15, 1925. By reason of the fact

that this power of attorney was not recorded until November, 1925, appellants contend that the same cannot be considered for any purpose. They overlook the fact that regardless of whether either of the respondents herein knew of such power of attorney, the existence of the same affords ample support to the finding of the trial court that Arthur C. Vaughan was in fact the agent of Jessie Vaughan. In the face of this solemn written declaration of agency by the parties themselves the trial court was thoroughly justified in finding that such an agency existed, notwithstanding the testimony of appellants to the contrary. Arthur C. Vaughan and Jessie Vaughan testified that the former was the owner of the real property; that the latter merely held title to the same as trustee. The deed to Jessie Vaughan raised a presumption that she was the owner of the same in fee. (Code Civ. Proc., sec. 321.) The execution of the power of attorney to Arthur Vaughan, when considered with all the evidence of the case, clearly supports that presumption.

 "A presumption, even if disputable, will raise a conflict which is sufficient to support a finding made in accordance therewith, even though there be evidence to the contrary. Whether a presumption has been controverted is a question of fact." (*Grantham* v. *Ordway,* 40 Cal. App. 758, 761 [182 Pac. 73, 74], and cases cited.)

It was the duty of the trial court to determine the credit and weight to be accorded to the testimony of appellants when considered in conjunction with the facts and circumstances of all of the transactions as revealed by the evidence of the entire case. (*Donovan* v. *Kemper,* 26 Cal. App. 352, 356 [146 Pac. 1044]. In view of the evidence in the instant case this rule appears peculiarly applicable to the facts herein.

 Appellant Arthur C. Vaughan offered in evidence seven checks drawn by him on Farmers & Merchants National Bank of Los Angeles in favor of various payees, and which checks it appeared had been cashed by the payees named therein. These checks were drawn between May 10, 1925, and June 3, 1925, after the first deed of trust, and the former second deed of trust had been executed and delivered to the respective respondents herein. In response to a question of counsel as to the purpose of the offer, appellant Arthur C. Vaughan stated they were offered "to show that other moneys went into the property besides the money

loaned". Objection to the receipt of these checks in evidence was made on the ground that the same was immaterial. The court sustained the objection, which ruling is designated by appellants as exception number one. The checks were drawn by appellant between May 10 and June 3, 1925, and after the first deed of trust for $29,801.20 and the second deed of trust for $7,500 had been executed and delivered to the respective respondents herein. It is not claimed that the checks were drawn in the presence of officers of either of the respondents nor with their knowledge. The checks were therefore certainly immaterial and incompetent and the objection thereto properly sustained.

Libbie L. Vaughan was asked the question: "Did you know or consent to the property being put in the name of Jessie Vaughan?" Objection thereto was made by respondents upon the ground of immateriality "in view of the fact that the evidence of plaintiff shows all the transactions were handled by this witness' husband". The action of the trial court in sustaining the objection is designated as appellants' objection number three. The ruling was proper. It nowhere appears that either of the respondents herein had knowledge prior to the filing of the action that Arthur C. Vaughan was married; in fact in their reply brief appellants state that "there was no occasion for Vaughan to volunteer the information of his marriage to Mr. Burgess". The court's ruling on this objection was proper for the very same reason set forth in reference to appellants' exception number one.

C. Edwin Adams, of respondent Peoples Mortgage Company, was asked the question on direct examination: "State when it was you first learned that the plaintiff, Libbie L. Vaughan, claimed any interest in this property that is covered by these trust deeds." Objection was made by appellant Arthur C. Vaughan on the ground that it was incompetent and irrelevant; "it would be just the same to ask a witness when he knew a certain deed was recorded, or if it was recorded". The ruling of the trial court overruling the objection is designated as appellants' exception number six. The ruling of the court was proper and in any event was in no way prejudicial to appellants.

Certain other "exceptions" appearing in the bill of exceptions as numbers two, four and five are not mentioned in

the appellants' briefs on appeal. Since they are not supported by authorities this court may properly assume that they have been abandoned by appellants. Under such circumstances, this court is not required to consider them.

Appellants urge that the trial court erred in denying the motion for new trial. We have carefully considered such of the evidence as appears in the record herein, and the exceptions to the rulings of the court thereon and find no error requiring a reversal of the judgment herein.

The judgment is therefore hereby affirmed.

Cashin, J., and Knight, Acting P. J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 25, 1933.