[Civ. No. 36996. Second Dist., Div. Two. Sept. 1, 1971.]

THUNDERBIRD INVESTMENT CORPORATION et al.,
Plaintiffs, Cross-defendants and Appellants, v.
EDWARD ROTHSCHILD et al.,
Defendants, Cross-complainants and Appellants.

## COUNSEL

Zagon, Schiff, Hirsch, Levine & Mark and Daniel S. Mark for Plaintiffs, Cross-defendants and Appellants.

Arnold, Smith & Schwartz, Robert M. Dohrmann and Sharon E. Giannetta for Defendants, Cross-complainants and Appellants.

## OPINION

**HERNDON, Acting P. J.—**

### STATEMENT OF THE CASE

Plaintiffs appeal from an adverse judgment entered in this action wherein they have claimed that defendants charged them a usurious rate of interest in a 1963 loan transaction in which they borrowed $300,000 from defendants. This loan was evidenced by a promissory note and secured by a deed of trust on real property.

The basic issue presented by this appeal is whether or not the loan transaction involved the collection of interest that was usurious as a matter of law. On the basis of its findings of fact, the trial court concluded and held that the loan was not usurious. Plaintiffs contend that the findings are not supported by the record; that the court erred in refusing to make certain findings requested by them; and that the subject loan transaction was usurious as a matter of law. By their cross-appeal defendants have presented the issue whether the trial court erred in refusing to grant them an award of attorney's fees pursuant to the provisions of the promissory note.

We have concluded that the trial court made findings upon every essential and material issue of fact; that each of these findings is supported by substantial evidence; and that the findings of fact fully support the conclusions of law and judgment. We have also concluded that defendants are entitled to recover attorney's fees for the services of their counsel in defending the action on the merits.

### PROCEDURAL HISTORY

On August 13, 1966, plaintiffs filed a complaint seeking recovery of treble the amount of their interest payments, for declaratory relief in the form of an adjudication that the loan was usurious, and for a preliminary injunction enjoining the defendants from taking any action to enforce

collection pursuant to the terms of the promissory note and from fore-closing on the outstanding deed of trust. Prior to the filing of this complaint plaintiffs had become delinquent and were in default by reason of their failure to make payments required by the terms of the promissory note.

On September 27, 1966, defendants filed their answer, denying the allegations of plaintiffs' complaint and, by way of counterclaim, sought a judgment against plaintiffs for $215,000, the principal sum remaining unpaid on the note, together with interest from the date of default at the rate of 10 percent per annum; for judicial foreclosure of the deed of trust; and for reasonable attorney's fees. On September 27, 1966, defend-ants also filed a cross-complaint against plaintiffs for the principal sum due under the note plus interest, for reasonable attorney's fees and for foreclosure. On October 4, 1966, plaintiffs and cross-defendants filed their answer to defendants' and cross-complainants' cross-complaint, denying the allegations therein and alleging that the subject loan transaction and note were usurious and in violation of the laws of the State of California.

On December 28, 1966, plaintiffs paid defendants the balance of prin-cipal and interest due on the promissory note, together with the moneys necessary to reimburse defendants for their trustee's fees and costs and their attorney's fees incurred to said date. Defendants thereupon recon-veyed the property covered by the deed of trust. All said moneys were paid and received with the understanding that the parties to the action reserved all of their rights and defenses in connection with the pending litigation.

On February 21, 1967, plaintiffs filed their supplemental complaint for usury, and on March 14, 1967, defendants filed their answer thereto. The case was tried in November of 1969. The decision and judgment of the trial court was as indicated above.

Throughout the remainder of this opinion we shall refer to plaintiffs as "appellants" and the defendants as "respondents." Having verified the accuracy of the statement of facts set forth in respondents' brief and the presence in the record of substantial evidence to support all of the facts recited therein, we have substantially adopted that statement.

STATEMENT OF FACTS

In the summer of 1963, appellant Dor-Kap Investment Company (here-inafter referred to as "Dor-Kap"), was a limited partnership, with ap-pellant Thunderbird Investment Corporation, the general partner, and appellants Milton Kaplan, Harry Mollin, David Kaplan, Hal Wiseman and Roy Norris, the limited partners. Hal Wiseman, as President of

Thunderbird Investment Corporation, the general partner of Dor-Kap, made the loan arrangements involved in this controversy.

In August of 1963, Hal Wiseman, as chief executive officer of Thunderbird Investment Corporation, sought financing in connection with the completion of construction of Glen Towers, an apartment building owned by Dor-Kap. Mr. Wiseman contacted Lorraine Weiler in seeking funds for the partnership. Miss Weiler was the sole shareholder and principal executive officer of the Los Angeles Mortgage Company.

On September 4, 1963, Mr. Wiseman, on behalf of Dor-Kap, entered into a written agreement employing Los Angeles Mortgage Company to secure a 36-month loan for Dor-Kap in the amount of $300,000, bearing interest at the rate of 10 percent per annum, to be secured by a second deed of trust on Glen Towers. Dor-Kap agreed to pay Los Angeles Mortgage Company a commission of 5 percent or $15,000 for obtaining such loan.

Thereafter, Miss Weiler called various clients in attempting to sell the loan. She contacted Mr. Nelson, attorney at law, to inquire if any of his clients might be interested in lending funds to Dor-Kap. Miss Weiler informed Mr. Nelson that she thought the maximum amount of the loan should be $300,000.

Miss Weiler offered Mr. Nelson $7,500 out of her commission if Mr. Nelson could supply a lender and the loan was consummated. Mr. Nelson understood that he was offered this money to compensate him for his assistance to Miss Weiler in placing the loan. Miss Weiler voluntarily proposed to Mr. Nelson that they divide the brokerage commission. Earlier, at the time Mr. Wiseman signed the agreement employing Los Angeles Mortgage Company, Miss Weiler had told Mr. Wiseman that she would have to take care of someone and pay attorney's fees. She told Mr. Wiseman she was willing to pay one-half of her commission for attorney's fees.

Miss Weiler suggested to Mr. Wiseman that because of the nature of the loan, she would require legal advice involving attorney's fees, and, in view of the fact that most lenders have brokers who represent them and who would take at least half of her commission, Mr. Wiseman should pay her more commission. Mr. Wiseman refused and informed Miss Weiler that she would have to pay any attorney's fees out of her own commission. He stated that the borrowers would pay nothing more.

Mr. Nelson met Mr. Wiseman only after the borrowers had already signed the commission agreement employing Los Angeles Mortgage Company. Mr. Nelson never acted on behalf of the lenders to require appellants

to pay a commission to Los Angeles Mortgage Company. During 1963, Mr. Nelson never conversed with Mr. Wiseman regarding the $15,000 commission, and Mr. Wiseman never spoke to any of the lenders about the loan. Miss Weiler never told any of the lenders that she was paying any portion of her commission to Mr. Nelson.

After having been contacted by Miss Weiler, Mr. Nelson called respondent The Valley Company, Inc. and then respondent Edward Rothschild about the possibility of their participating in lending money to Dor-Kap. Mr. Nelson called Mr. Rothschild and told him that The Valley Company, Inc. was going to lend a portion of the money. Mr. Rothschild told Mr. Nelson that if The Valley Company, Inc. was interested, he would be interested. Mr. Rothschild stated that it was his policy not to lend more than $100,000 in one loan transaction, and he later secured an agreement from respondent T & S Realty to share in the loan with The Valley Company, Inc. and himself.

At the time of the loan transaction Mr. Nelson was employed by respondent The Valley Company, Inc. under a $20,000 per year retainer agreement to investigate and advise the company of real estate opportunities on the West Coast. Mr. Nelson received $20,000 from The Valley Company, Inc. in 1963 and 1964. Mr. Nelson did all of the necessary work in connection with the loans made by The Valley Company, Inc. on the West Coast. Mr. Nelson made recommendations, risk assessments and processed loans for The Valley Company, Inc. Mr. Nelson was responsible for the details of implementing the loans, including the Dor-Kap loan, by taking care of the escrow, physically examining the property, examining income-loss statements, and the like. Mr. Nelson was compensated by The Valley Company, Inc. for his services related to the Dor-Kap loan. The services he performed with respect to this loan were within the scope of his retainer agreement with The Valley Company, Inc.

Prior to the Dor-Kap loan transaction and until 1961, Mr. Nelson had worked for a real estate development partnership known as Gilbert and Rothschild as general manager and house counsel for the partnership. Thereafter, Mr. Nelson continued his personal friendship with Mr. Rothschild which had commenced in 1956. Mr. Nelson occasionally gave some business and legal advice to Mr. Rothschild, but other than on one or two occasions when he gave advice Mr. Nelson performed no other kind of service for him in 1963, other than such as one friend would do for another. Mr. Nelson never acted as a lender in any kind of relationship with any of the respondents. He has never shared any ownership interest of any kind or nature with any of the respondents.

When Mr. Nelson called Mr. Rothschild about the possibility of Mr.

Rothschild's lending money to Dor-Kap, Mr. Rothschild knew that Mr. Nelson was being paid by The Valley Company, Inc. for his services in finding investment opportunities. Mr. Rothschild felt no obligation to pay attorney's fees to Mr. Nelson. This was because he knew The Valley Company, Inc. was paying Mr. Nelson for his services.

At the close of escrow, Mr. Nelson was paid one-half of Miss Weiler's commission, $7,500, from the escrow pursuant to Miss Weiler's instructions. The borrowers received from escrow a net amount, minus Miss Weiler's $15,000 commission. Escrow closed on November 5, 1963.

The facts with respect to the nature and extent of the participation of each of the respondents in the Dor-Kap loan transaction were detailed in extensive testimony given at the trial. During 1963 and 1964, Mr. Nelson never disclosed and never intended to disclose to any of the respondents that he was to receive $7,500 upon consummation of the Dor-Kap loan. William H. Muchnic, President of The Valley Company, Inc. and the individual from The Valley Company, Inc. with whom Mr. Nelson communicated regarding loans, had no knowledge until the giving of his deposition in 1967 that Mr. Nelson had received $7,500 in connection with the Dor-Kap loan. Mr. Rothschild was unaware until the case had been commenced that Mr. Nelson was to receive $7,500. Likewise, respondents Theodore Rosenberg and Sidney Rosenberg, partners of respondent T & S Realty, had no knowledge of the $7,500 payment to Mr. Nelson until long after Mr. Nelson received said sum.

None of the respondents ever received any portion of the $7,500 which Miss Weiler paid to Mr. Nelson out of her commission. None of the respondents was given any credit against any obligation then or thereafter owing by any of them to Mr. Nelson by virtue of Mr. Nelson's receipt of the $7,500. Mr. Nelson rendered no additional services to the respondents because of his receipt of the $7,500 out of Miss Weiler's commission. The Valley Company, Inc. had agreed only to pay Mr. Nelson in conformity with its retainer agreement with him; this was the only agreed-upon remuneration he received in connection with the Dor-Kap loan transaction. Mr. Rothschild was interested in the loan because The Valley Company, Inc. was interested in the loan. Mr. Rothschild stated that he did not recall discussing fees related to the Dor-Kap loan transaction with Mr. Nelson, and that he never agreed to pay Mr. Nelson any fees therefor. Mr. Rothschild knew that Mr. Nelson was being paid by The Valley Company, Inc. for his service under his retainer. Likewise T & S Realty Company was in no manner obligated to pay Mr. Nelson anything for any serivce in connection with the Dor-Kap loan transaction. There was

testimony to the effect that none of the respondents ever intended or attempted to evade the California laws against usury.

### The Trial Court's Findings

As we have indicated, the foregoing statement of the facts constitutes an accurate summary of the evidence. We hold that this evidence supports the trial court's findings, the following of which determined the basic and controlling issues of fact:

"13. . . . In the making of such agreement with Los Angeles Mortgage Company, William E. Nelson was dealing in his own behalf and for his own personal benefit and not on behalf of or as agent or attorney for defendants and cross-complainants herein."

"15. On or about October 7, 1963, Lorraine Weiler instructed the escrow holder, in writing . . . to pay $7,500.00 of the commissions to be earned by Los Angeles Mortgage Company in the subject transaction to that Company and to pay the balance of said commissions in the sum of $7,500.00 to William E. Nelson upon consummation of the escrow. At no time until months after the filing of the complaint herein did defendants and cross-complainants, or any of them, have any knowledge of such instructions."

"17. At no time did defendants and cross-complainants herein, or any of them, receive any portion of any monies received by Los Angeles Mortgage Company or by William E. Nelson, or either of them, from the proceeds of the subject loan, and at no time did defendants and cross-complainants herein, or any of them, ever receive any credit therefor or, in any manner, otherwise benefit therefrom. Said monies were respectively received by Los Angeles Mortgage Company and by William E. Nelson for their own use and personal benefit."

"25. At no time did defendants and cross-complainants herein, or any of them, intend to violate the Usury Laws of the State of California in connection with the subject transaction, at no time until after the commencement of the within action and until the taking of the first deposition of defendants and cross-complainants therein did defendants and cross-complainants, or any of them, have any knowledge of any sums paid to William E. Nelson by Los Angeles Mortgage Company in connection with the subject transaction as aforesaid, and at no time did defendants and cross-complainants, or any of them, ever receive any benefit of any kind or nature from any such payment."

Later herein we shall discuss the applicable law which requires the conclusion that the instant judgment is supported by the quoted findings.

There is no merit in appellants' contention that the trial court erred in refusing to make certain of the findings requested by them. These proposed findings upon evidentiary facts were unnecessary and even if made would not impeach or contradict the findings of the ultimate and determinative facts.

APPELLANTS' CAPACITY TO
MAINTAIN THIS APPEAL.

Respondents have correctly pointed out that appellant Thunderbird Investment Corporation is without right to prosecute this appeal by reason of the undisputed fact that on October 1, 1969, Thunderbird's corporate powers, rights and privileges were suspended for nonpayment of its franchise taxes. (*Boyle* v. *Lakeview Creamery Co.*, 9 Cal.2d 16 [68 P.2d 968]; *Ocean Park Etc. Co.* v. *Pacific Auto P. Co.*, 37 Cal.App.2d 158 [98 P.2d 1068].)

Respondents make a plausible argument that the other appellants, who are the limited partners in the partnership of which Thunderbird is the sole general partner and the partnership itself, are likewise incapacitated because of the legal status of a general partner in a limited partnership and by reason of the provisions of section 15526 of the Corporations Code indicating that a general partner is a necessary party to an action of this kind.

Respondents concede that this latter argument presents a more difficult question, the answer to which would require the decision of a legal issue of first impression. (Cf. *Laurel Crest, Inc.* v. *Vaughn*, 272 Cal.App.2d 363 [77 Cal.Rptr. 538].) In view of the fact that the judgment herein must be affirmed on the merits, we deem it unnecessary to decide the debatable question whether or not this appeal might properly be dismissed.

THE INSTANT LOAN TRANSACTION WAS NOT RENDERED USURIOUS BY THE BORROWERS' PAYMENT OF A COMMISSION TO A THIRD PARTY WHERE THE LENDERS RECEIVED NO PART OF THE COMMISSION AND RECEIVED NO BENEFIT OR CREDIT BY REASON OF ITS PAYMENT.

Article XX, section 22 of the California Constitution provides as follows: "No person, association, copartnership or corporation *shall by charging* any fee, bonus, commission, discount or other compensation *receive from a borrower* more than 10 percent per annum upon any loan or forbearance of any money, goods or things in action." (Italics added.)

The quoted constitutional provision requires that charges in excess of 10 percent must be received by the lender from the borrower in order

to characterize a loan ·as usurious. In the case at bench respondents received no payment from appellants in excess of the legal limit. Appellants received no part of the commission paid to Miss Weiler and Mr. Nelson.

■ As stated by the Supreme Court in *In re Fuller,* 15 Cal.2d 425, 434 [102 P.2d 321]: "This construction of the Usury Law recognizes and applies the general rule that the word 'interest,' while broad enough to cover 'bonus,' 'commission,' or any other form of 'compensation' paid to the lender for the use of money, does not include brokerage or other compensation paid to a third person, or expense items such as appraisals, recording fees, insurance, or similar charges."

In the early case of *Niles* v. *Kavanagh,* 179 Cal. 98, 100 [175 P. 462, 1 A.L.R. 831], the Supreme Court stated: "A payment to an agent of the lender is, in effect, a payment to the lender himself. But where the lender is in no way interested in a charge, or connected with it, the transaction is not to be denounced as usurious."

In *Vaughan* v. *Peoples Mortgage Co.,* 130 Cal.App. 632, 641 [20 P.2d 335], the court quoted with approval the following statement from an A.L.R. annotation: " 'The great weight of authority supports the doctrine that a loan is not rendered usurious by the lender's agent charging the borrower, for his own benefit, a commission or bonus for procuring the loan, in excess of the maximum legal rate of interest, where such charge is made without the lender's knowledge or consent, either express or implied, and is not ratified or shared in by him.' [Citations.]"

In *Nuckolls* v. *Bank of America,* 10 Cal.2d 278 [74 P.2d 271], the Supreme Court of California cited with approval the decisions in *Vaughan* v. *Peoples Mortgage Co., supra,* and *Niles* v. *Kavanagh, supra,* and other decisions cited in the *Vaughan* case. In *Nuckolls,* a case in which a husband had transferred to his wife certain obligations in a community property settlement and thereafter had collected usurious interest on the obligations and retained same for his own benefit without the knowledge or consent of his wife, it was held that the transaction was not rendered usurious as to the wife by the acts of the husband even though he was the agent for the wife for the purpose of collecting on the obligation.

Thus, it is apparent that the receipt by Mr. Nelson of one-half the broker's commission, even if it had been directly from the borrowers, would not have tainted the loan with usury because the lenders did not know of Miss Weiler's payment to Mr. Nelson, received no part thereof and derived no

benefit therefrom. ■ In sum, the law is settled that a loan is not rendered usurious where the lender's agent without the knowledge, consent, authorization or ratification of the lender, collects a fee for his own benefit.

### Respondents Are Entitled To An Award Of Attorney's Fees For The Services Of Their Counsel In The Trial Court And On This Appeal.

Appellants' action seeking recovery of treble the amount of interest paid by them pursuant to the provisions of the promissory note on the basis of their claim that the payment constituted a usurious exaction necessarily involved the validity of the provisions of the note relating to interest and the right of respondents to retain the payment of interest which they had received pursuant thereto.

■ The note contained the standard provision that "If action be instituted on this note, I promise to pay such sum as the court may fix as attorney's fees." We hold that this action in every realistic sense is an action on the note within the meaning and purpose of the note's provision for recovery of attorney's fees.

On December 28, 1966, appellants paid respondents the entire amount of principal and interest due under the terms of the promissory note and the further sum of $1,417.65 for attorney's fees and trustee's fees incurred incident to the foreclosure proceedings which had been commenced by respondents. In making this payment appellants reserved the right to pursue their action for usury and in receiving it respondents did not cancel the promissory note but reserved their right to claim attorney's fees for the services of their counsel in defending the usury action.

Thus, it appears that appellants paid respondents the sums due and owing under the terms of the promissory note with the declared intention of seeking a recovery of more than $90,000 on the basis of their claim that the interest payment was usurious. Obviously, it was necessary for respondents to incur substantial additional attorney's fees in defending their right to retain the payment of the interest to which they were entitled under the terms of the promissory note.

The judgment is affirmed in all respects except that respondents should have been awarded reasonable attorney's fees incurred by them for the services of their counsel in defending the usury action. The cause is remanded to the trial court for the sole purpose of determining and awarding

to respondents the attorney's fees to which they are entitled for the services of their counsel rendered in the trial court and on this appeal.

Respondents will recover their costs on appeal.

Fleming, J., and Compton, J., concurred.