[Civ. No. 58928. Second Dist., Div. Three. Jan. 26, 1981.]

THOMAS H. HOBBS et al., Plaintiffs and Respondents, v.
FRANK T. BUCK, as Trustee, etc., et al., Defendants and Appellants.

**COUNSEL**

Charles A. Druten and Myers & D'Angelo for Defendants and Appellants.

Cohen & Ehrmann and Sanford M. Ehrmann for Plaintiffs and Respondents.

OPINION

KLEIN, P. J.—Defendants and appellants Frank T. Buck (Buck), trustee of the Julia D. Mock Trust, and the Julia D. Mock Trust (trust) appeal from an order granting a preliminary injunction to remain in effect during the pendency of the action, enjoining them from foreclosing on certain deeds of trust executed by plaintiffs and respondents Thomas H. Hobbs and Ann C. Hobbs (the Hobbs) as security for loans made to them by Buck and the trust.

### PROCEDURAL AND FACTUAL BACKGROUND

In a complaint for declaratory relief, injunction and damages for usury filed March 6, 1979, the Hobbs allege that two loans were made to them by Buck and the trust pursuant to two contracts.

The first contract, dated March 28, 1978, provides for a loan of $88,000, a commission to Buck of $8,000, and proceeds of $80,000 to the Hobbs. The contract requires interest at 10 percent per annum over the three-year term of the loan and monthly payments of $733.33.

The second contract dated July 11, 1978, is in similar form but provides for a loan of $77,000, a commission of $7,000, and proceeds to the borrowers of $70,000.

Both loans were secured by deeds of trust executed by the Hobbs.

The Hobbs allege that the "true purpose and intent" of the contracts was to allow Buck and the trust to receive usurious interest at the rate of approximately 20 percent per annum.

The answer set forth in pertinent part that in March 1978, the Hobbs represented to Buck that they desired to borrow $88,000 from the trust and would execute a promissory note in favor of the trust for that amount with interest at the rate of 10 percent per annum monthly with principal due and payable in three years, and that Buck would deduct $8,000 from the loan proceeds as a commission. Said representations were confirmed by letter dated March 24, 1978, from the Hobbs to Buck. The Hobbs' attorney at the same time required as a condition of the transaction the payment to him of a "finder's fee" of $1,600, payable out of the $8,000 commission. Upon execution of the loan contracts, Buck disbursed the amounts agreed upon, less the commissions.

The answer further alleged that the disbursement of the commissions was made without the knowledge, consent, authorization or ratification of Julia D. Mock, the trustor and sole beneficiary of the trust, that at no time did either the trust or the beneficiary receive any portion of the commissions which were paid to Buck, and that neither Buck nor the trust had any intent to violate the Usury Law of California.

Some of the foregoing allegations were also set forth in declarations of Buck and the trustor-beneficiary.

The matter was heard on July 12, 1979, and the trial court rendered its decision by way of minute order dated October 5, 1979, and this appeal followed.

## CONTENTION

Buck and the trust contend that a loan does not become usurious in a situation where the trustee acting on behalf of the trust deducts a commission from the principal amount of the loan for his own benefit without the knowledge of the trust.

## DISPOSITION

We agree with the contention for the reasons hereinafter discussed and therefore the order granting the preliminary injunction is vacated.

## DISCUSSION

Neither side herein is contending that the Usury Law does not apply to the loan of money from the res of a trust, even though article XV, section 1, of the California Constitution *which was in effect at the time of this transaction* spoke in terms of "... person, association, co-partnership and corporation ...."[1] Nor would we be inclined to so hold, since in spite of the nebulous nature of a trust in legal fiction, such a ruling would be readily utilized in the business marketplace to defeat the purpose, and would be contrary to the intent, of the Usury Law.

---

[1] Article XV, section 1 read: "No person, association, co-partnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than 10% per annum upon any loan ...."

Proposition 2, effective November 7, 1979, states that the 10 percent maximum rate is limited to loans in which the money is for use for "personal, family or household purposes," i.e., consumer loans, and an alternative maximum rate was specified for nonconsumer loans.

■ A trust has been defined as "a fiduciary relationship with respect to property, subjecting the [trustee] by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." (Rest. 2d Trusts, § 2.) It is settled that the trust "relationship" has certain characteristics distinguishable from those generally associated with agent and principal and therefore in dealing with certain aspects of trusts, contract law principles have been applied differently. (See 60 Cal.Jur.3d, Trusts, §§ 190, 191.)

However, the law of trusts in California is governed wholly by statute. (*McCurdy* v. *Otto* (1903) 140 Cal. 48, 53 [73 P. 748].) That being the case, in the absence of being advised of the specific terms of the declaration of the trust herein, Civil Code section 2267, which provides that a trustee is a general agent with authority to bind the trust property much as an agent binds his principal, seems to be controlling in the fact situation before us.[2]

Given the applicability of Civil Code section 2267, the language of that section enables this case to be brought within the principles enunciated in *Thunderbird Investment Corp.* v. *Rothschild* (1971) 19 Cal.App.3d 820 [97 Cal.Rptr. 112]. There, the borrowers brought an action against the lenders for treble their interest payments, contending that the loan was usurious as a result of the fact that in addition to interest computed at the maximum rate, they also paid a commission to the lender's attorney. In holding that the transaction was not usurious the Court of Appeal summarized the authorities and concepts in part as follows: "In the early case of *Niles* v. *Kavanagh,* 179 Cal. 98, 100 [], the Supreme Court stated: 'A payment to an agent of the lender is, in effect, a payment to the lender himself. But where the lender is in no way interested in a charge, or connected with it, the transaction is not to be denounced as usurious.' [¶] In *Vaughan* v. *Peoples Mortgage Co.,* 130 Cal.App. 632, 641 [], the court quoted with approval the following statement from an A.L.R. annotation: '"The great weight of authority supports the doctrine that a loan is not rendered usurious by the lender's agent charging the borrower, for his own benefit, a commission or bonus for procuring the loan, in excess of the maximum legal rate of in-

---

[2]Civil Code section 2267 provides: "A trustee is a general agent for the trust property. His authority is such as is conferred upon him by the declaration of trust .... His acts, within the scope of his authority, bind the trust property to the same extent as the acts of an agent bind his principal."

terest, where such charge is made without the lender's knowledge or consent, either express or implied, and is not ratified or shared in by him." [Citations.]' [¶] In *Nuckolls* v. *Bank of America*, 10 Cal.2d 278 [], the Supreme Court of California cited with approval the decisions in *Vaughan* v. *Peoples Mortgage Co.*, *supra*, and *Niles* v. *Kavanagh, supra*, and other decisions cited in the *Vaughan* case. In *Nuckolls*, a case in which a husband had transferred to his wife certain obligations in a community property settlement and thereafter had collected usurious interest on the obligations and retained same for his own benefit without the knowledge or consent of his wife, it was held that the transaction was not rendered usurious as to the wife by the acts of the husband even though he was the agent for the wife for the purpose of collecting on the obligation. [¶] Thus, it is apparent that the receipt by Mr. Nelson of one-half the broker's commission, even if it had been directly from the borrowers, would not have tainted the loan with usury because the lenders did not know of Miss Weiler's payment to Mr. Nelson, received no part thereof and derived no benefit therefrom. In sum, the law is settled that a loan is not rendered usurious where the lender's agent without the knowledge, consent, authorization or ratification of the lender, collects a fee for his own benefit." (*Id.*, at pp. 829-830.)

The facts in *Thunderbird* involved a corporate lender and an attorney in its employ. The services the attorney performed with respect to finding and recommending the borrowers were within the scope of his retainer agreement with his corporate employer. In holding that the additional commission received by the attorney did not render the loan usurious, the court in *Thunderbird* stressed that the lender not only did not profit from its agent's commission, the corporation did not even know of his arrangement.

Likewise in the fact situation before us, the only evidence we have on the issue, the declarations of both Buck and the trustor and sole beneficiary, Julia D. Mock, executed under penalty of perjury, discloses that Buck personally received the commissions solely for his own benefit and without the knowledge of Ms. Mock.

The case of *Vaughan* v. *Peoples Mortgage Co.*, *supra*, 130 Cal.App. 632, cited with approval in *Thunderbird*, involved the vice president of the defendant loan company making a loan for $25,000 on certain terms, plus a bonus to himself of 10 percent. The loan company received no part of the bonus. The vice president was the sole representative of the company in the negotiations, and the court stated,

". . . hence that corporation is presumed to have had knowledge of all the facts and circumstances surrounding the negotiations for the loan." (*Id.*, at p. 639.)

However, in holding that such presumptive knowledge did not render the loan usurious as to the corporate lender, the court went on to state: "The reason for the rule is apparent. In the absence of ratification of a usurious transaction or participating in the usurious profit therefrom, to hold a corporation liable for the illegal acts of its officers will result in either opening the door to a wholesale fraud upon stockholders or offering an undue reward by way of treble interest to those who participate in or who may promote illegal transactions. Such a construction of the Usury Law would soon penalize corporate management to the extent that its present day usefulness would be totally destroyed. Of course, if a corporation knowingly ratifies or participates in the usurious profits of a transaction, it will be held to suffer the consequences." (*Id.*, at p. 644.)

 Similarly in the case before us, the trust should not be subjected to the severe penalties of the Usury Law where Buck personally received the commission solely for his benefit, and the trust neither knew about, ratified, nor profited from, the commission. The premise underlying the reason for the rule which applies to agents and corporate officers is just as compelling in the case of trustees. "The presumption is against the existence of usury. [Citations.]" (*Arneill Ranch v. Petit* (1976) 64 Cal.App.3d 277, 289 [134 Cal.Rptr. 456].)

There appear to be no California cases dealing with trustees administering trust property who are utilizing the otherwise not uncommon business practice among other agents and principals of deducting commissions from loans. The trial court observed in its decisional minute order that "[n]o California case has confronted the issue of whether a trustee who exacts a commission from the borrower for making a loan from trust funds so that the rate of interest of the amount received is usurious subjects the trust to the defense of usury," and noted that in other jurisdictions, "the scant authority is at best divided."

Granting a dearth of authority on the subject, the reasoning of the trial court in holding the transactions in question usurious is nonetheless not entirely clear. The trial court seems to rely on the fact that the trust had the right to recoup the commission from the trustee in addition to its right to collect on the note, and found the agreement usurious "un-

der this theory," citing a 1914 New Jersey case wherein three justices dissented (*McFadden* v. *Palmer* (1914) 83 N.J.Eq. 621 [92 A. 396] and an 1886 Missouri case (*Landis* v. *Saxton* (1886) 80 Mo. 375 [1 S.W. 359].)

The *McFadden* case involved a guardian receiving a bonus from the net proceeds of a loan. There was no discussion by the court therein of the law applicable to loans made by agents. The *Landis* case is inapposite because Saxton *individually*, and not in his capacity as executor, became the owner of the note, and the court expressly stated: "Whether the note should be held to be tainted with usury in the hands of the . . . estate . . . presents a question which we do not determine." (*Landis* v. *Saxton, supra*, 80 Mo. 375, 376 [1 S.W. 359, 360].)

An 1883 New York case contains modern, relevant and persuasive reasoning. In *Fellows* v. *Longyor* (1883) 91 N.Y. 324, the highest court of the State of New York held that the receipt of a commission by the trustee does not render the loan usurious, observing: "A trustee, although he may be vested with title to the trust fund, has a mere naked title, without any proprietary or disposable interest in the property. His power over it is limited either by known rules of law or those capable of easy ascertation, and he cannot be considered the lender of the trust funds within the meaning attached to that term by our statutes relating to usury. By the contract of loan, the real lenders were not to receive anything in excess of legal interest. [¶] The principles frequently declared by this court seem to preclude any view of this transaction which would lead to a contrary conclusion. The cases are quite numerous to the effect that where an agent loans [monies] belonging to his principal, and as a condition of the loan receives a bonus from the borrower for his own benefit, without the knowledge, consent, or authority of his principal, the security taken for such loan is not thereby rendered void for usury. [Citations.] In analogy with this principle, we think the transaction in question was not usurious." (*Id.*, at pp. 329-330.)

We have noted the precedent in California case law that a loan is not rendered usurious where the lender's agent collects a commission for his own benefit without the knowledge, consent, authorization or ratification of the lender. (*Thunderbird Investment Corp.* v. *Rothschild, supra*, 19 Cal.App.3d 820, 830.) Because a trustee is expressly made an agent with authority to bind the trust to the same extent as the acts of an agent bind his principal pursuant to Civil Code section 2267, there is no sound reason why the rationale enunciated in *Thunderbird* should not

apply to trustees dealing with trust property. We discern no reason in logic, precedent or policy to conjure up a different set of rules to govern a trustee's loan of trust funds in a modern society already overly burdened with complex laws.

The order granting the preliminary injunction is hereby vacated.

Allport, J., and Potter, J., concurred.

A petition for a rehearing was denied February 25, 1981, and respondents' petition for a hearing by the Supreme Court was denied March 25, 1981.